**TEXAS EMPLOYERS' INS. ASS'N v. HEUER et al. (No. 1751.)**

Court of Civil Appeals of Texas. Beaumont. Nov. 15, 1928.

Rehearing Denied Nov. 21, 1928.

Morris, Sewell & Morris, of Houston, for appellant.

Houth, Adams & Hart, of Beaumont, for appellees.

WALKER, J. On or about the 17th day of November, 1926, while in the course of his employment with the Texas Company, a subscriber under our Compensation Act, with appellant as its insurer, appellee received serious personal injuries entitling him to compensation. His claim was duly presented to the Industrial Accident Board, which award-ed him compensation. Appellant gave due notice of its dissatisfaction with this award, and prosecuted its appeal to the district court of Jefferson county. Appellee answered by the usual cross-action, pleading the facts of his injury, and praying for a lump-sum settlement as for permanent total incapacity. Answering special issues, the jury found: (1) That appellee was injured in the course of his employment with the Texas Company on or about the date alleged in the petition; (2) his injury resulted in total incapacity; (2½) his incapacity was permanent; (5) at the time of his injury appellee's average daily wage was $7 per day; (6) the average weekly wage of those similarly employed in the vicinity in which appellee was working was $42 per week for a period of 52 weeks prior to his injury; (7) his injuries consisted of injuries to his index finger of the left hand, arm, and shoulder; (8) appellee's injuries were permanent and not temporary; and (11) appellee was entitled to a lump-sum settlement. The case is before us upon appeal duly prosecuted from a judgment in appellees' favor entered on the jury's verdict.

Appellant's main proposition is that the verdict of the jury finding appellee totally and permanently incapacitated is so against the great weight and preponderance of the evidence as to be clearly wrong. We have given most careful consideration to the facts of the record, and have concluded that the verdict has support. That appellee was injured in the course of his employment was not contested. His trade was that of tank rigger, which he had been following for about 20 years. On his testimony, on the day of his injury, while working on a tank, the jack supporting the tank slipped, the tank fell upon the index finger of his left hand, mashing the end of the finger, and rolled up against his arm and shoulder, inflicting upon the finger, arm, and shoulder serious injury, resulting in severe pain. He testified that the pain from the injury was very severe, continuous, and wholly incapacitated him for work. Because of the injury to his hand, he said he would never be able to follow again his trade as tank rigger, and the condition of his hand, as exhibited to the jury, corroborated him on that issue. He had not been able to secure any other kind of employment, and because of his continual suffering would not be able to do hard manual labor, which was all he was qualified or prepared by experience to do. It was shown by another witness, who had known appellee since 1920, that prior to his injuries he was a healthy, able-bodied laborer, able to do heavy lifting and other hard work incident to the trade of tank rigger, and that he had worked constantly at this trade since 1920, holding the respect of his employer and fellow laborers. Appellee testified that he had worked at his trade for about 20

years. Mrs. Williams, with whom he boarded after this injury, testified to his suffering from the injuries, and her efforts to wait upon him while he was boarding with her. Dr. A. A. Bailey testified:

"I am sixty-four years old, and a practicing physician. I had occasion to examine Heuer yesterday afternoon. I had him strip down to his waist and examined both of his arms and found some signs of an injury to his right arm and also found signs of an injury to his left hand; I found evidences of an old injury to his right arm and evidences of an old fracture to his right arm. I also examined his left arm and hand, shoulder and finger and found two fingers that were stiff and could not be straightened or bent. The middle finger was stiff and could not be bent, even by applying pressure. The flexibility was bad. The middle finger was very stiff and he could not bend it. In my opinion the stiffness of that middle finger was due to an injury. It is my opinion that it took an injury of some kind to produce that stiffness of the third finger of the left hand. During the time I was examining this man yesterday I also examined his left arm, the elbow joint and shoulder, etc. The motion of his left arm here at the elbow is very much curtailed. He cannot turn his arm like this; he can't raise it any higher than this. He couldn't bend it up. He had about thirty or forty per cent. loss of motion in the elbow joint. It is also my opinion that the rotation of the arm is also about the same amount of disability; that is about thirty or forty per cent. disability. By rotation I mean the ability to turn his arm around; his ability to turn it one way or the other. He couldn't get this motion without suffering severe pain; there is thirty or forty per cent. disability of that arm. It is painful on pressure, especially over the nerves and over the ligaments holding the bones in position. It was very painful at points along in here (indicating) when I was making the examination. He also had a shoulder injury. He has what I consider a partial dislocation of the shoulder joint. I mean that there is a partial dislocation of the left shoulder joint. If you will bring Mr. Heuer around here I will be glad to explain what I mean by partial shoulder dislocation. There are those fingers I was talking about. You will see he can't bend this middle finger at all. Those joints are stiff, but this one here is stiffer than the rest of them. He has lost about sixty or seventy per cent. of the power in that hand. There is also a loss of rotation in this arm. You see that he has because he can't turn this arm around any farther than that (indicating).

"Now getting to the shoulder dislocation. You see these bones are out. You see this bone here is out of place, it is out like this (indicating); it ought to be back in under there like that (indicating). You see when he raises that arm it pulls all this up. When he raises the scapula that holds the bone it moves the scapula up. He can't raise the arm any higher than that, and even that is very painful to him. There is probably about 70 per cent. disability there. I would give a 70 per cent. classification of that arm. I don't know what caused that condition in his left arm and shoulder, but I know it was produced by some violence of some kind."

Appellant offered much credible evidence contradicting appellee's testimony as to the circumstances of his injury and the extent of his injuries. Credible doctors testified that in their opinions he was not permanently injured. They testified that they could find no condition in his body explaining the constant suffering testified to by appellee. This testimony, while of great weight, made only an issue against the testimony offered by appellee. The issue of total permanent disability was raised for the jury, and its verdict thereon should not be disturbed by us.

■ Article 8309, R. C. S. 1925, is, in part, as follows:

"'Average weekly wages' shall mean:

"1. If the injured employé shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed."

Under this statute appellee pleaded his average weekly wage as follows:

"At the time of the injury to defendant, Heuer, he was earning under his contract of hire with the subscriber the sum of $8.00 per day and for more than a year immediately preceding the injury he had worked in the employment in which he was working at the time of the injury and during the days when so employed he earned a wage of $9.00 per day; and that by reason of said facts said defendant alleges his average weekly wages, within the meaning of the Act, were $54.00, and that his weekly rate of compensation for said injury is $20.00 per week."

■ This pleading was not excepted to. Clearly it was sufficient to raise the issue that appellee had worked "substantially the whole of the year immediately preceding the injury," "in the employment in which he was working at the time of the injury." In the absence of a special exception calling for the allegation, it was not necessary for appellee to plead the length of time he had worked for his then employer and for the others for whom he had worked in the same class of employment. The evidence on this issue sustains the issue raised by the pleading. While appellee received his injury on the first day of his employment with the Texas Company, he had been working in the same immediate territory for many years prior to his injury. His testimony was that his employment during the last years preceding his injury was that of tank rigger, being the same class of work he was doing at the time of his injury. That he was foreman of his work crew part of the year immediately preceding his injury did not make his employment different. He received the same wages as foreman that was paid the members of his crew, and he did the same work.

All assignments and propositions against the sufficiency of the evidence to sustain the jury's verdict on the issue submitted are overruled.

Several years prior to the date of this injury, appellee received an injury to his right arm, for which he was paid compensation in the sum of $1,500. On this trial, appellant pleaded the facts of the old injury as a bar to appellee's right to recover herein, and also under article 8306, § 12c, in mitigation of appellee's damages under the present injury. As we understand appellant's proposition, it now urges that it was entitled as a matter of law to a credit for this $1,500 against the judgment rendered herein. This contention cannot be sustained. There was no evidence that the old injury was a contributing factor to appellee's present disability.

Appellant reserved the following exception to argument of counsel for appellee:

"Be it remembered that on the trial of this cause the following proceedings were had:

"While the Hon. C. W. Howth, was making his closing argument, and just in his closing sentence and peroration, he said to the jury: 'I do not believe that this jury will permit this insurance company, or any other insurance company, to enrich itself and its doctors by beating down and diminishing this claim and the amount which this defendant is entitled to recover.'

"When this argument was made, plaintiff's attorneys promptly objected on the ground that such argument was improper, prejudicial and not supported by the record, and requested the court to instruct the jury not to consider it; whereupon the court said: 'Gentlemen, the argument is closed and I will not instruct the jury any further.'

"To all of which the plaintiff then and there in open court excepted, and here now tenders this its bill of exception."

This bill is defective in that the trial court does not certify expressly and affirmatively that there was no evidence to justify the argument, nor that there was no evidence upon which the argument could have been founded, nor that there was no argument on the part of opposing counsel to provoke the argument complained of. Because of these defects, the bill does not constitute reversible error. Travelers' Insurance Co. v. Peters (Tex. Civ. App.) 3 S.W.(2d) 568; Kansas City, M. & O. Railway Co. v. West (Tex. Civ. App.) 149 S. W. 206; Pecos & N. T. Railway Co. v. Suitor (Tex. Civ. App.) 153 S. W. 191.

Appellant presents many assignments of error and propositions thereunder attacking the court's charge. Issues Nos. 2, 2½, and 3, with the definition under No. 2, are as follows:

"(2) If you have answered Special Issue Number One (1) 'yes' then did such injuries, if any, result in the total incapacity of said defendant, G. A. Heuer?

"Answer 'yes' or 'no' as you find the facts to be.

"In connection with the foregoing special issue No. Two, you are instructed the 'phrase permanent total incapacity for work as used in the Workmen's Compensation Act, does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as total incapacity.

"(2½) If you have answered Special Issue Number One (1) 'yes' then did such injuries, if any, result in the permanent incapacity of said defendant, G. A. Heuer?

"Answer 'yes' or 'no.'

"(3) If you have answered Special Issue Number Two (2) 'no' and only in that event then answer Special Issue Number Three (3) Did such injuries, if any, result in permanent partial disability of the said A. G. Heuer?

"Answer 'yes' or 'no' as you find the facts to be."

The definition of "permanent total incapacity" given in connection with issue No. 2 does not constitute reversible error in favor of appellant. That the jury was required to find that the incapacity was permanent as well as total before they could answer question No. 2 in the affirmative was not to appellant's prejudice. It was not error to instruct the jury, as was done in questions 2, 2½, and 3, to answer or not answer certain questions, provided preceding questions had been answered in a certain way. It is now the established practice to instruct the jury that affirmative or negative answers to certain questions relieve it of the duty to answer certain other questions. Western Indemnity Co. v. Corder (Tex. Civ. App.) 249 S. W. 317. No exception of any kind was reserved to question 2½, nor was any exception reserved to the omission of the court to define "permanent incapacity." Issue No. 2 submitted only the issue of "total incapacity," and was not multifarious. Appellant asserts that issue No. 2 should have been limited to the injury to the arm and finger. The issue of total incapacity was raised by the evidence, and therefore the submission of the issue in the form of question No. 2 was not erroneous. On the facts of this case, issue No. 3 was not multifarious, but, if so, appellant was not injured thereby. Its language was clear, and, in view of the answers given to the previous questions, the jury, understanding question No. 3, was instructed not to answer it. While a party is required to reserve his exception to a multifarious issue because he cannot anticipate the jury's answer thereto, the injury flows from the answer and not from the question. The injury results from the fact that the losing party cannot know with certainty the facts found by the jury in answer to such questions, and therefore cannot properly except to the answers. The mere submission of the multifarious question to which the jury because of its answers to other questions is not required to give an answer does not con-

stitute reversible error. There is no merit in appellant's proposition that the issues construed together constituted a general charge. Appellant's other assignments against the charge have no support in the exceptions reserved at the time of the trial, and therefore cannot be considered.

Finding no error, the judgment of the trial court is in all things affirmed.