## STEDMAN FRUIT CO. v. SMITH et al.
### No. 1941.

Court of Civil Appeals of Texas. Beaumont.
May 8, 1930.

Rehearing Denied May 14, 1930.

Thomas, Frank & Grady, of Dallas, and King & Jackson, of Beaumont, for appellant.

Howth, Adams & Hart, of Beaumont, for appellees.

HIGHTOWER, C. J.

This suit was filed by the appellees, J. T. Smith and his wife, in one of the district courts of Jefferson county against appellant, Stedman Fruit Company, to recover damages for personal injuries alleged to have been sustained by Mrs. Smith in consequence of alleged negligence on the part of appellant. Appellees alleged, in substance, that on the 10th day of June, 1927, an automobile in which they were driving along Main street in the city of Beaumont was run into and struck by an automobile truck owned by appellant and which was being driven at the time by an employee of appellant, and that in consequence of the collision between the truck and

appellees' car Mrs. Smith was caused to be violently thrown from the seat of the car in which she was riding and to be precipitated to the paved street along which they were traveling, and was thereby caused to sustain serious and permanent injuries, which were described quite in detail in the petition. The ground of negligence alleged was, in substance, that while appellees were proceeding north in their car on Main street and were on the proper or right-hand side of the street, the truck of appellant, being driven by a colored man who was the employee of appellant, was proceeding south on Main street and was being driven on the left side of that street, and that it was negligence on the part of appellant's driver to drive the truck on the left side of Main street as he did at the time, and that as a proximate result of that negligence the collision between appellant's truck and appellees' car took place with the resultant injuries to Mrs. Smith. This was the only ground of negligence relied upon by appellees in their pleading and the only issue of negligence that was submitted.

Appellant answered by general demurrer as well as many special exceptions, by general denial, by special averments of contributory negligence on the part of appellees, and especially appellee J. T. Smith, who was driving the automobile, and in addition appellant specially averred that the collision between the truck and the car which caused the injuries to Mrs. Smith was the result of an unavoidable accident, and that therefore appellant was not liable, etc.

The case was tried to the jury and was submitted upon special issues, all of which were answered in favor of appellees, and upon the verdict as a whole, and in accordance therewith, judgment was rendered by the trial court in favor of appellees for $8,000, and appellant's motion for new trial having been duly made and overruled, this appeal was perfected and prosecuted.

The briefs in the case are very voluminous, too much so, and appellant has presented some fifty propositions upon which we are asked to reverse the judgment. We shall not undertake to discuss all these propositions separately, because we regard some of them as being without any force whatever, and shall confine our opinion to such of appellant's contentions as might be considered to have some merit in them.

For convenience, and to save time, we group appellant's first three propositions, which relate to the action of the trial court in overruling about thirty-five special exceptions challenging the sufficiency of appellees' petition as to the nature and extent of Mrs. Smith's injuries. The contention of appellant in this connection is, in substance, that the petition was multifarious, argumentative, and but the opinion and conclusion of the

pleader; that the statement of Mrs. Smith's injuries, that is, the nature, character, and extent of her injuries, were stated too generally and not specific enough; and that they were so general and indefinite that appellant was not thereby apprised of what appellees would probably undertake to prove upon the trial, and therefore was not sufficiently informed by the allegations of the petition so that it could properly prepare its defense to this suit. That part of the pleading of the appellees to which these special exceptions were directed showing the nature, character, and extent of the injuries sustained by Mrs. Smith, are found in paragraph 5, section b, of the second amended petition of the appellees, as shown by this record. These allegations are as follows:

"(b) Plaintiff, Mrs. Carroll Smith, wife of the said J. T. Smith, sustained severe painful and permanent personal injuries in that her right knee and the muscles, ligaments and tendons thereof were severely contused and sprained, and she sustained a deep cut in the forehead; her back and the muscles, ligaments and tendons thereof were severely wrenched, contused and sprained, and two bones of her back were partially dislocated and the bones of her left wrist were fractured and the muscles, ligaments and tendons thereof permanently sprained; the vertebra or back bone, and the bony processes thereof were twisted and disturbed and there is a slipping of the sacro illiac joint with consequent disturbance of the normal position of the sacrum and the lower lumbar segments of the spine in relation to the pelvis; that there is a curve in or about the junction of the cervical and dorsal divisions in the back bone and the segments or bony processes thereof; that the said curve is ankylosed or fixed; that one of the bony processes or segments of the spinal column or back bone is fractured and the same has produced and will produce a permanent injury and that she has, ever since said injury, suffered greatly with headaches, pains in the back and hips, the back muscles were contracted, high blood pressure and rapid pulse, extreme dizziness and extreme general weakness; that she has lost in weight and flesh and is mentally depressed and suffers from constipation and general auto-intoxication; the bones of her right wrist were fractured, injuries to her left knee, deep cut in top of her head on the left side; injuries to her neck and two or more vertebrae of her neck are dislocated and wrenched, and the muscles, ligaments and tendons sprained and bruised, and injuries to her back, several of the vertebrae dislocated, some being pulled apart and others jammed together. All of these injuries caused an extremely nervous condition and caused permanent injuries to her eyes and vision and nervous system generally. She has lost much weight and is un-

able to sleep; and the use of her right hand and arm which are in such condition that movement causes pain and pulling of the ligaments and tendons of her neck so that she cannot use her right arm and hand. Her right knee was sprained and injured, contused and slightly stiffened and these conditions have caused lack of control and ability to use her knee and her knee gives way in walking and getting up and down and there is probably a paralysis of the muscles and nerves connected with the knee, rendering it impossible to control the movements of the knee. Her eyesight has been so affected and also her hand, that she is unable to drive a car and as she walks along or rides along everything grows dark and she loses her vision temporarily, and she has suffered and will continue to suffer in the future great physical pain and mental anguish, and all of her said injuries are permanent and the direct and proximate result of said collision, to her actual total damage in the sum of Twenty Five Thousand ($25,000.00) Dollars for which she sues."

Without undertaking to discuss in detail the sufficiency of these allegations touching the nature and extent of Mrs. Smith's injuries, we hold that the petition was not subject to the attacks made upon it by appellant's special exceptions, but was sufficient as a full and fair statement of the ultimate facts upon which the appellees were relying for recovery, if in fact the statements, as made, were true. We overrule appellant's contention in this connection.

By its fourth proposition appellant challenges the action of the trial court in defining the term "negligence." That term was defined by the trial court as follows: "(a) Negligence is the failure to use ordinary care."

In the next paragraph following the court defined "ordinary care" as follows: "(b) Ordinary care is that degree of care that a person of ordinary prudence would use under the same or similar circumstances."

As we gather, the contention of appellant in this connection is, in effect, that the court should have simply told the jury that "negligence is the failure to exercise such care as an ordinarily prudent person would have exercised under the same or similar circumstances." In other words, it seems to be appellant's contention that because the court defined the term "negligence" in one paragraph and the expression "ordinary care" in the next paragraph that this constituted prejudicial error, in that it confused the jury in their effort to understand the definition of the term negligence. We overrule this contention. It would not, of course, have been error had the trial court defined "negligence" just as counsel for appellant think it should have been defined. Neither was it error to define the term "negligence" separately from the expression "ordinary care," as the court did.

By its fifth proposition appellant contends that the trial court erroneously defined the term "new and independent cause." The court's definition of that term was as follows: "A new and independent cause is an intervening efficient force which breaks the causal connection between the original wrong and the injury. Such new force must be sufficient of itself to stand as the cause of the injury and be one but for which the injury would not have occurred. The term 'new' refers to and means a cause incapable of being reasonably foreseen by the original wrongdoer by the use of ordinary care on his part; and the word 'independent' refers to and means the absence of the relation of cause and effect between the new cause and the original wrongful act or omission; and, unless the intervening cause is thus both new and independent, sufficient of itself to stand as the cause of the injury, breaking the causal connection, the original wrongdoer is not relieved from legal responsibility for his wrong or negligence." Appellant objected to this definition of new and independent cause, its objection being that the same was too long and involved and unintelligible and was confusing to the jury and prolix, vague, indefinite, and uncertain, and itself has a number of words which are more difficult to understand than the words "new and independent," and the said definition is involved and does not clearly define "new and independent cause" to the jury. This objection was overruled and appellant saved the point. In connection with this contention, counsel for appellant cites the case of Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570. In that case the point was made by the appellant that the court gave no definition at all to guide the jury as to what was meant by the term "new and independent cause," and the court's charge was excepted to for that failure. Our Commission of Appeals held that the trial court should have defined the term "new and independent cause." That was all that was decided in that case. It may be that the definition of the term "new and independent cause," as given by the trial court in this case, is long and prolix and might have been and it may be that it was confusing to the jury, but we are unable to say that it was, and since counsel for appellant have made only this general objection to the court's definition, pointing out nothing specifically, we overrule the contention. We do not mean to hold, in this connection, that counsel for appellant, in order to save the point, were required to frame and tender to the trial court a proper and correct definition of the term "new and independent cause," but what we do hold is that such a general ob-

jection as was interposed to the court's definition of that term by counsel for appellant, pointing out nothing specifically, ought not to be held reversible error on the part of the trial court unless we are able to say that the definition of the term complained of was affirmatively erroneous or so clearly insufficient as to be no definition of the term "new and independent cause."

■ Appellant's sixth proposition challenges the correctness of the court's definition of the term "contributory negligence." That was defined as being "such an act or omission on the part of the plaintiff, or one claiming to be injured, amounting to a want of ordinary and proper care and prudence as, concurring or cooperating with some negligent act or omission (if any) of the defendant, is a proximate cause of the injury." The objection to this charge was that it placed a lower degree of care upon the plaintiff than was proper, and instructed the jury that the plaintiff must be guilty of an act or omission amounting to a want of ordinary and proper care and prudence before plaintiff could be guilty of contributory negligence, thereby placing a higher degree of care upon the defendant than was placed upon the plaintiff, and left the jury without a proper standard to determine whether the plaintiff was guilty of contributory negligence. As we read this definition of "contributory negligence," it is one that has been approved in many cases in this state, and we fail to see any basis for appellant's objection to it. Counsel for appellant cite no authority in their brief sustaining them in this contention.

■ The seventh proposition complains of the court's definition of the term "unavoidable accident," as used in the charge to the jury. That definition was as follows: "An unavoidable accident exists where the injuries or damages are not proximately caused by any negligence of commission or omission on the part of either party."

The objections interposed by appellant were: "Defendant objects and excepts to the definition of 'unavoidable accident,' contained in the court's main charge, because said definition does not define accident at all and does not define unavoidable, and the court should have charged the jury that unavoidable accident means the happening of an event without negligence of either party, but for which the injury to the plaintiff would not have occurred."

We are unable to see any substantial difference between the definition of the term "unavoidable accident" as given by the court and that suggested as the correct definition by counsel for appellant, and we overrule this contention; and no authority is cited by counsel for appellant in connection with this contention.

■■ Special issue No. 1 submitted by the court to the jury was as follows: "Do you find from the preponderance of the evidence that defendant's truck driver drove and operated its automobile truck on the left hand side of the street at the time of and immediately before the collision?" Counsel for appellant in due time objected to the form of this special issue on the grounds that it was leading and suggestive and upon the weight of the evidence, and assumed that the truck driver was an agent of defendant's, and that the truck belonged to defendant, and was being operated in defendant's business, and that the truck driver was an agent of defendant in the discharge of his duties, and it suggested to the jury that they find the answer in the affirmative, and was prejudicial and virtually constituted the submission of this case to the jury on the general issue. We overrule appellant's contention in this connection. The only issue of negligence submitted for the jury's consideration was as to whether the appellant's driver was guilty of negligence in being on the left side of the street as he was proceeding south, as we have already stated, and that is the issue of fact submitted in this connection. If it be true that the form of this issue is subject to the criticism that it assumed that the driver of the truck was appellant's agent and that the truck belonged to appellant, the court had a right to assume that that was true because the undisputed evidence in this case was that it was true. All other objections to the form of this special issue are overruled.

■ After submitting special issue No. 1, which we have just quoted, the court, in immediate connection therewith, instructed the jury that if they answered that issue "no" they need not answer any other issues submitted to them; and under this instruction, having answered special issue No. 1 "yes," it was not error for the court to submit special issue No. 2, as was done, which is made the basis of appellant's ninth proposition. Special issue No. 2 was as follows: "Do you find, from the preponderance of the evidence, that the act of the defendant's truck driver, in driving and operating said truck on the left hand side of the street at the time of the collision and immediately prior thereto, was negligence?" This issue was objected to on the ground that it was leading and was suggestive and was upon the weight of the evidence, immaterial, and irrelevant. Of course, the issue was not irrelevant but was clearly relevant under the pleadings and evidence. The only possible criticism that could have been made of the form of the issue was that it was leading and suggestive, and we would agree that it was subject to that criticism had it not been for the form of special issue No. 1.

■ Immediately following, and in the same connection with, special issue No. 2, the trial

court instructed the jury as follows: "If you answer the next preceding Issue No. 2 'no,' then you need not answer this, the third issue, but if you have answered it 'yes,' then answer the following issue of fact." Then the courts submits special issue No. 3, which was as follows: "Do you find, from the preponderance of the evidence, that such negligence, if any, of defendant's truck driver in driving or operating the truck on the left hand side of the street was a direct and proximate cause of the collision?" Now it is contended by counsel for appellant that special issue No. 3, as submitted, was upon the weight of the evidence and that it was leading and suggestive; but in view of the form of special issue No. 2 and the instruction given immediately in that connection, we hold that special issue No. 3 was not subject to the criticism and objection made by appellant.

 Special issue No. 8 submitted to the jury was as follows: "What amount of money, if paid now, do you find from the preponderance of the evidence would reasonably compensate Mrs. Carroll Smith for her damages, if any, proximately sustained by her as a direct result of the negligence (if any) of the defendant?

"In estimating such damages you will take into consideration the nature of her injuries, if any, and whether serious and permanent or otherwise, together with the other facts and circumstances in evidence, and assess her damages at such sum as you may believe from the evidence will reasonably compensate her for such injuries, if any, that she sustained on the occasion in question, taking into consideration as elements of damage, mental anguish, and physical suffering directly resulting to her therefrom, if any, including such as will in reasonable probability directly result to her therefrom in the future, if any."

It is not counsel's contention in this connection that the pleadings and evidence of the appellees did not warrant the submission of the issue here complained of, but the objection is that it was suggestive and misleading, and assumed that Mrs. Smith was injured in the collision between appellant's truck and the car of appellees. The form and substance of the charge here complained of has been upheld in practically innumerable cases in this state and seems to have been carefully drawn in telling the jury as to what they might take into consideration in arriving at the amount of damages to which appellees might be entitled to recover. If it is subject to the criticism that it assumed that Mrs. Smith was in fact injured in the collision, the trial judge was not in error in such assumption, because undoubtedly the undisputed testimony in this case shows that she was injured in that collision, and the only question touching her injuries there sustained was the extent of such injuries. This has the

effect to dispose of the tenth and eleventh propositions insisted upon by appellant. Houston Electric Co. v. Seegar, 54 Tex. Civ. App. 255, 117 S. W. 900; Gulf, etc., Ry. v. Glenk, 9 Tex. Civ. App. 599, 30 S. W. 278; Railway Co. v. Curry, 64 Tex. 85; Besso v. Southworth, 71 Tex. 765, 10 S. W. 523, 10 Am. St. Rep. 814; San Antonio & Aransas Pass Ry. v. Keller, 11 Tex. Civ. App. 569, 32 S. W. 847.

By its twelfth proposition appellant challenges the verdict of the jury and the judgment of the court on the ground that it is excessive; but we will pretermit a discussion of that contention at this point, since it is again raised by counsel for appellant under their fiftieth proposition.

 Counsel for appellant, by their thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, and nineteenth propositions, challenge the action of the trial court in admitting certain evidence of appellees' witness Dr. E. Marvin Bailey, showing and describing certain injuries sustained by Mrs. Smith in the collision; appellant's objection to this evidence being that there was no basis for it in the pleadings. To undertake to discuss these propositions in detail would carry this opinion to such an unreasonable length that we decline to do so, but hold that all the testimony objected to in this connection was admissible under the allegations in the appellees' petition, and overrule these propositions. When Dr. Bailey was upon the stand as a witness, he was permitted to refer to a standard medical chart showing the picture of the human spine, merely for the purpose of explaining and in connection with his testimony as a physician and one who had carefully examined and treated Mrs. Smith for a long time. The chart was not introduced in evidence as a chart or for any purpose, but Dr. Bailey was merely using it to explain his testimony as a physician, showing where he located and what the character of the injuries were to Mrs. Smith during his treatment of her. How this could have prejudiced appellant to any extent we are unable to see. We overrule this contention.

 Appellant, under its propositions Nos. 21 and 22, complains of the admission of certain evidence of Dr. Bailey, who was shown to be an expert, on the ground that there was no basis for it in the pleading and because there was no predicate laid in the evidence and because it was not responsive to the questions in that connection. We overrule all these objections because, as to the basis for the evidence objected to in the pleadings, we hold that the evidence was properly admitted in response to the pleadings, and as to the objection that there was no predicate laid for this expert testimony in the evidence we hold that the bill is insufficient to show any error, for the reason

that there is no statement by the trial judge that there was not a proper predicate laid for the admission of this testimony, but the bill only shows that that was counsel's ground of objection to it. It is not an affirmative statement by the trial court that the grounds of the objection in fact existed and, therefore, it fails to show any error. In addition to this, it is our conclusion that these contentions should be overruled upon their merits. The testimony of Dr. Bailey, objected to in this connection, was in substance that Mrs. Smith's injuries, as he found them and for which he treated her, could have been caused by the collision in question and fall from the car to the hard pavement of the street, as the undisputed testimony in this case shows to have occurred.

Upon the trial the witness Ivy Marble was permitted to testify that immediately after the collision in question he examined the car in which appellees were riding at the time, and in describing the condition of the car stated in substance that it was caused from a blow of some kind. This witness, as shown by the trial court's qualification to the bill in this connection, was an expert automobile mechanic and that he saw the car immediately after the collision, and the testimony was offered merely for the purpose of showing that the car had received, in some way, a hard blow. As we understand this record, there was no question about the collision between appellant's truck and appellees' automobile. We find no error in this ruling of the trial court.

Under its twenty-fourth proposition appellant contends that the trial court committed error in permitting the witness I. D. Hamshire to testify as to the rate of speed at which appellant's truck was going at the time of the collision and also the speed at which appellees' car was traveling at the time. The witness stated that in his opinion appellees' car was traveling about ten or twelve miles per hour and that the truck was going "pretty peart." This evidence was objected to on the ground that the witness was not shown to be qualified to give his opinion as to the speed of these cars at the time of the collision. There is no affirmation by the trial court that this witness was not qualified to so testify, and for that reason the bill shows no error, and the contention is overruled. Texas Employers' Ins. Ass'n v. Heuer (Tex. Civ. App.) 10 S.W.(2d) 756; Travelers' Ins. Co. v. Peters (Tex. Civ. App.) 3 S.W.(2d) 568; Southern Casualty Company v. Vatter (Tex. Civ. App.) 275 S. W. 1105.

Under its propositions Nos. 25 and 26 it is appellant's contention that the court committed error in permitting the witness Jerry Stedman to testify, in substance, that it was his opinion that the negro truck driver was in the employ of the appellant at the time of the collision in question and was in the discharge of his duties at the time. We do not think that any error prejudicial to appellant was shown here, for the reason that upon cross-examination the witness stated that he did not know for sure whether the negro truck driver was at that time in the discharge of his duties as an employee of appellant, but it was merely assumed by the witness that he was. The witness further admitted that he himself was connected with appellant's business and was one of the stockholders in appellant's business and he was well acquainted with the negro truck driver and knew, as this record shows, that this negro had been working for appellant in that capacity for a long time, and we are not sure, under these circumstances, but what it was proper to admit the testimony of Stedman. Anyway, as we said, this record shows that this negro driver had been regularly in the employ of appellant as driver for some time prior to this collision, and the undisputed testimony in this record shows that he was driving appellant's truck at about noon of the day this collision occurred, and we think that it ought to be presumed, under these circumstances, that he was in the discharge of his duty as appellant's employee in handling its business truck at a business hour of the day in the absence of any showing by appellant that such was not the fact.

It is contended by appellant under its propositions Nos. 27, 28, 29, 30, and 31 that the trial court committed error in admitting, over its objection, certain evidence of Mrs. Smith dealing with the nature and extent of her injuries. This objection was based upon appellant's contention that appellees' pleading was not full and definite enough to admit this testimony. We think appellant is mistaken in this contention and that the evidence of Mrs. Smith objected to in this connection was clearly admissible under her pleading, and overrule that contention.

By its proposition No. 32 appellant makes the contention that the court committed prejudicial error against it in admitting in evidence a certain ordinance of the city of Beaumont relative to the operation of a certain kind of automobile trucks, on the ground that the ordinance was contrary to the state law on the subject and was incompetent, immaterial, and irrelevant. The record shows that this ordinance had been pleaded by the appellees but, as a matter of fact, it was not submitted for the jury's consideration at all, and we cannot see how its introduction had the effect to prejudice appellant even if their contention is correct that the ordinance is contrary to the provisions of the state law on the same subject, which we do not stop to determine. The ordinance was admissible under the pleadings and there was

no request by appellant for a charge taking it away from the jury after it had been introduced, and under the state of this record we are convinced that its introduction could not prejudice appellant in the least.

 Appellant contends under its thirty-third proposition that the trial court committed error in permitting the plaintiff J. T. Smith to testify to the effect that before the collision in question he had never observed any nervous condition in his wife, and that she drove cars wherever she pleased and when she pleased before that collision, but that since the collision she cannot drive, and that one cannot drive with her with any pleasure, and that her vision has been so affected that she cannot see how to drive a car. This testimony was objected to on the ground that it called for an expert opinion from a nonexpert witness who had not been shown to be qualified. In the first place, we do not believe that this testimony comes within the domain of expert testimony, but if it does the bill discloses no error because there is no affirmation by the trial court that this witness was not shown to be able to give an expert opinion upon the matters inquired about. Authorities on that question we have already cited in connection with other propositions. But we repeat that it does not occur to us that this testimony was in the nature of expert testimony. It was a husband who had been living with his wife for something like twenty years testifying to the fact that she suffered from no nervous condition discoverable by him prior to this collision and that her vision was such that she could drive automobiles when and where she pleased, but that since the collision she has been unable to do so. We think this testimony related to facts that the witness certainly ought to have been able to observe.

 Under its thirty-fourth proposition appellant contends that the trial court was in error in refusing to permit its witness Dr. John R. Bevil to testify to the effect that "the pendency of a lawsuit causes a person to remain sick, and has the effect of making said person more nervous, and that ordinarily the settlement of such a suit or disposition of same would have a tendency to cause a person to come back to normal condition." This bill fails to show error, first, because it does not disclose what the objections interposed by counsel for appellees to this evidence were. As said in Texas Jurisprudence, vol. 3, § 335, p. 478: "It has been held in numerous cases that to warrant a review of the admission or exclusion of evidence, the bill of exceptions taken to the ruling must show the grounds upon which the evidence was objected to in the trial court, or, as the rule is sometimes stated, the ground of objections upon which the evidence was excluded, or the grounds of objection which were sustained." Many authorities are there cited. This court has so held in a number of cases. One of them is Carlton v. Conkrite, 249 S. W. 522, where we cited the authorities sustaining our holding. We are further of the opinion that the trial court properly excluded this tendered testimony. It is true that learned counsel for appellant contend that appellees' witness Dr. Bailey, while a witness on the stand, had testified that so far as he knew the pendency of a lawsuit would not have the effect that appellant proposed to show by its witness Dr. Bevil, and counsel contend that this testimony of Dr. Bevil ought to have been admitted to contradict Dr. Bailey. We went to the record on this point to find how the question arose, and there discovered that counsel for appellant brought out this testimony from Dr. Bailey, who admitted that he did not know what effect on a person a pending lawsuit might have. In view of the manner in which this question came up, we repeat that the trial court was correct in refusing to admit Dr. Bevil's testimony, and overrule this contention. We might add that learned counsel for appellant were not able to cite any authority in their brief sustaining this contention.

 Upon the trial appellant offered to prove by its witness Dr. Bevil that if he were treating a sprain to a person's ankle or knee he would undertake to cure it by putting it in a plaster paris cast and would not attempt to cure it by twisting or manipulating it as chiropractors and osteopaths would do. This tendered evidence was objected to by appellees and the objection was sustained. The bill of exceptions in this connection does not affirmatively and clearly show what the objections interposed to this testimony were, though we might surmise from what is in the bill that the objection to it was that the tendered evidence was immaterial and irrelevant to any issue in the case. Therefore, as the bill is presented, it presents no error because it fails to state what the objections were that were made and sustained by the trial court. Authorities supra. We think, however, that this tendered evidence was properly excluded because we find in the answer of appellant no pleading to the effect that appellees were guilty of negligence in the manner in which Mrs. Smith's injuries were treated or in the selection that she made of a physician to treat her. If such an issue had been made by the pleadings of appellant and sustained by proof, it would present an entirely different question. We might again add that counsel for appellant cite no authority supporting their contention under this proposition.

 By their thirty-sixth proposition counsel for appellant insist that the trial court was in error in permitting Dr. E. C. Ferguson to testify for appellees in this case for the reason that all the physicians had been

placed "under the rule," and that thereafter Dr. Ferguson sat in the courtroom and heard some other doctor testify in disregard of the rule and that appellant's timely objection to his testifying ought to have been sustained. The record discloses that Dr. Ferguson did hear a part of the testimony of one doctor in the case, and it is true that he was permitted to testify over appellant's objection. Appellant's bill in this connection, however, does not show anything that Dr. Ferguson testified to, and if it did we would hold that, being a physician and having been introduced only as an expert medical man, the court had a right to exempt him from the rule or to permit him to testify even if he had been under the rule. But when the trial court approved the bill of exceptions tendered by appellant in this connection, it was with the express qualification that the rule had not been enforced with respect to any of the doctors who testified in the case. We overrule this contention.

Appellant's propositions Nos. 37 to 47, inclusive, relate to the action of the trial court in admitting and rejecting certain testimony. We have carefully considered appellant's contentions in this connection and have concluded that none of them present any error that could possibly have been prejudicial to appellant, and for that reason they are overruled. Some of the bills of exceptions in this connection are not in a shape to require consideration by this court; nevertheless we have considered them all and overrule them on their merits.

Under propositions Nos. 48 and 49, appellant complains of certain remarks made by one of the attorneys for appellees in his closing argument to the jury. The contention in this connection is that there was nothing in the evidence to justify these remarks and that they were inflammatory, and therefore prejudicial to appellant. The bills of exceptions in this connection fail to show affirmatively that there was nothing in the evidence to justify the remarks complained of, and therefore these bills point out no reversible error. The bills are further defective for the reason that they do not affirmatively show that the remarks complained of were not in reply to or provoked by counsel for appellant in their argument to the jury, and therefore they point out no reversible error. Southern Casualty Co. v. Vatter (Tex. Civ. App.) 275 S. W. 1105; Texas Employers' Ins. Ass'n v. Heuer (Tex. Civ. App.) 10 S.W.(2d) 756; Travelers' Ins. Co. v. Peters (Tex. Civ. App.) 3 S.W.(2d) 568; Kansas, etc., Ry. Co. v. West (Tex. Civ. App.) 149 S. W. 206; Pecos, etc., Ry. Co. v. Suitor (Tex. Civ. App.) 153 S. W. 185. Furthermore, the trial court's qualification of the two bills of exceptions in this connection show that the remarks complained of were justified by preceding remarks of counsel for appellant in their argument to the jury and, therefore, no error in this connection was shown.

By their fiftieth and last proposition, counsel for appellant contend that the verdict of the jury awarding to Mrs. Smith $8,000 as damages for the personal injuries complained of is so excessive that it is manifest that the jury was actuated by passion or prejudice or some other improper motive and, therefore, the trial court should have set the verdict aside upon appellant's motion, on that ground, and erred in not doing so. The statement under this proposition by which counsel for appellant attempt to state the evidence relative to the nature and extent of Mrs. Smith's injuries consists of about ten short lines in the brief; this consists of a few words of Mrs. Smith's evidence and no other evidence of any other witness in the case bearing upon the nature and extent of her injuries is mentioned at all. For this reason this court would be justified in overruling this contention without further comment; but we have examined all the evidence contained in the voluminous statement of facts in this case and have reached the conclusion that the evidence as a whole was amply sufficient to warrant the amount of the jury's verdict. It is true that in some respects this is an unusual case. The external injuries shown by the evidence to have been received by Mrs. Smith were very slight, being a gash in her forehead and a gash or laceration on one of her knees, and a sprained wrist, and perhaps some other slight abrasions. The undisputed evidence is to the effect that when the collision in question occurred the impact was so great that the door of the car in which Mrs. Smith was riding was knocked open and she was thrown and precipitated from where she was sitting on the rear seat of the car through the open door and her head struck the pavement of the street and her back was resting on the running board of the car and her feet were still in the open door of the car. When she was picked up by her husband, she seemed to be in a lifeless condition and was carried by him in a helpless condition for treatment. She was treated first for a short while by Dr. Bevil for the external lacerations and abrasions above mentioned. About July 25, 1927, something like six weeks after the collision, Mrs. Smith was placed under the treatment of Dr. E. Marvin Bailey of Houston, who is an osteopathic physician, and he continued to treat her often and regularly for a long period of time and practically up to the time of the trial. Dr. Bailey described in great detail in his testimony the nature and extent of Mrs. Smith's injuries as he found them to be and it would serve no useful purpose to detail his testimony in this connection. He had known Mrs. Smith for quite a while prior to the collision and testified that she was a well and hearty woman who had a pink and ruddy

complexion showing a good state of health, but since the time she claims to have been injured in the collision in question her health has gradually declined and she has become of a pale and sallow complexion and exceedingly nervous and much reduced in weight. He stated that his examination disclosed that her spine had been injured and disarranged, stating the details in that connection, and that there was a curvature at a certain point in her spine and several of the vertebra dislocated and disarranged, and that her pelvis was twisted and disarranged. He stated that all of these injuries, and others which he described in much detail, could have been produced by Mrs. Smith's fall from the car at the time of the collision, and that her nervous condition, as he found it to be, would be the natural and probable result of the injuries that he described.

Mrs. Smith herself testified in substance that before the collision in question she was a hale and hearty woman able to discharge her household duties and in good health generally and free from any nervous affection and had had very little ailments of any character prior to that time. She testified that since the collision her health had steadily declined; that she had lost considerably in weight, from ten to fifteen pounds; that she had suffered pain almost continuously since the time of the collision, describing in detail the location, etc., of her pains; that she has become so nervous that some nights she does not sleep at all and other nights very little; that she can discharge very few of her household duties and that the least activity or effort on her part greatly fatigues her and she becomes exhausted; that her vision has become greatly impaired and that at times she suffers with the most intense headaches; that she has dizzy spells during which she becomes almost blind; that her injured knee seems at times to be practically paralyzed; and that one of her arms at times is practically useless.

Mr. Smith testified in substance that prior to the collision in question his wife was a hale and healthy woman capable of discharging her household duties; could drive an automobile at any time anywhere and never suffered from any nervous affliction and never complained of any of the pains that she has continuously complained of since the collision. He further testified that the condition of Mrs. Smith since the collision had become such that she cannot drive an automobile at all for the reason that her vision has become defective and on account of her extremely nervous condition.

Another witness in the case, Mrs. Myrtle Smith (no relation to appellees), testified in substance that she had known Mrs. Smith a long time prior to the collision in question and knew the condition of her health and activity, and in stating the condition of Mrs. Smith since the collision this witness corroborated practically the testimony of Mr. and Mrs. Smith. She further testified that since the collision she had observed the great change that had taken place in Mrs. Smith and stated that on occasions when she would be shopping with Mrs. Smith the latter would become so exhausted and fatigued that she could hardly get along and would become lame in her knee, and other details which, if true, showed clearly that a great change has taken place in Mrs. Smith's physical condition and health from what it was prior to the collision in question. We have detailed enough of the testimony bearing upon the extent of Mrs. Smith's injuries to show that the jury's verdict in this case cannot be held to be excessive, and on account of the length to which this opinion has already gone we decline to discuss this contention any further.

The writer desires to state for himself that during the oral argument before us in this case he was inclined to accept the theory of counsel for appellant that the injuries claimed to have been sustained by Mrs. Smith were perhaps only slight and that there was much force in counsel's contention that the verdict was excessive, but after having gone through the record he is convinced that the amount of the verdict in this case is amply supported. If Mrs. Smith's injuries were caused by the negligence of appellant, as established by the jury (and appellant makes no contention that the jury's finding that appellant was guilty of negligence as charged is not sustained by the evidence), then we say that appellant has no just complaint as to the amount of the jury's verdict.

Having found no reversible error in this case, the judgment is affirmed.