## LANKFORD v. JETTER DRILLING CO.
### (No. 2130.)

(Court of Civil Appeals of Texas. Amarillo. April 25, 1923.)

**1. Mines and minerals ⏝109—In suit for drilling well, held, that there was no error in judgment on jury's findings as to amount allowed.**

In a suit for drilling an oil well, the jury found defendant agreed to pay a certain sum per foot, and also found that he agreed to pay less for drilling an offset well after an unsuccessful attempt to drill to depth agreed on, and one plaintiff testified that the second hole was drilled to complete the contract or lose what was made in the first, but there was no contention that there was a contract to drill the second well except to comply with the first contract, and such plaintiff's testimony further showed the contract for the second well priced the work so as to make it about the same as for the old well, allowing for what was paid. Evidence also showed defendant's agent indorsed on a bill for the work a memorandum indicating by an O. K. that the first well was paid for as agreed, as far as it went, and that there was a balance due for the offset well as claimed by plaintiff for the number of feet drilled at the less price agreed on. *Held*, that there was no error in a judgment on the findings allowing the full amount agreed on for drilling the second well in addition to the amount paid on the first.

**2. Appeal and error ⏝1062(2)—In suit for drilling oil well, held that it was not reversible error not to submit issue as to completion in reasonable time.**

In a suit for drilling an oil well, it was not reversible error not to submit an issue as to whether plaintiffs drilled a well for defendant within a reasonable time, where there was no claim that a second well, drilled after the first was abandoned, was not completed within a reasonable time, and defendant was allowed damages claimed for delay in working with the first before it was abandoned.

**3. Trial ⏝351(5) — Where issues submitted are sufficient as to a controversy not necessary to submit another as to same controversy.**

Where issues submitted sufficiently submit a controversy as to amount due under a contract, there is no necessity for the submission of another issue submitting the same controversy.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by the Jetter Drilling Company against P. P. Lankford. From a judgment for plaintiff, defendant appeals. Affirmed.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellant.

Bert King and Smoot & Smoot, all of Wichita Falls, for appellee.

BOYCE, J. Plaintiffs, Jetter Drilling Company, brought this suit to recover an amount alleged to be due for the drilling of a well by plaintiffs on defendant P. P. Lankford's oil lease, and certain amounts for material furnished and other work done in connection with the drilling of said well, and the appeal is from a judgment in plaintiffs' favor.

Two wells, or holes, as appellant styles them, were drilled. The second one was drilled because the first was lost in part in drilling, and the consideration of the assignments requires a brief statement of the respective claims of the parties with reference to the agreements and circumstances of the drilling of these two wells. The plaintiffs' case, made by pleading and proof, is that they contracted to drill a well to a depth of 1,400 feet for defendant at $5.50 per foot; that they drilled a well to an oil sand at 856 feet but, in attempting to go on down to 1,400 feet, at defendant's request, and as plaintiffs had agreed to do, lost certain material in the well, after having gotten down something over 1,200 feet, and were unable to drill it beyond that depth; that they were paid $3,500 on this well, and it was agreed that, in performance of their contract, they should drill an offset well to a depth of 1,400 feet at $3 per foot. They drilled this offset well, which they claim defendant accepted, to a depth of 1,401 feet and seek to recover $4,203 on this account and also certain other items not necessary to set out in detail.

The appellant's side of the controversy is that the agreement between the plaintiffs and the defendant provided for the drilling of a well with cable tools to a depth not exceeding 1,750 feet at the following prices: Three dollars per foot for the first 1,000 feet, $3.50 per foot for the next 400 feet, $4 per foot for the next 150 feet, and $4.50 per foot for the next 200 feet; that plaintiff failed to drill such well according to contract and defendant was entitled to recover the $3,500 paid plaintiffs; that defendant furnished the fuel, oil, and water necessary to do such drilling, and that the plaintiffs used an unreasonable and unnecessary amount of oil and water in doing the work, putting defendant to an unnecessary expense on this account, amounting to the sum of $4,700, which he also sought to recover. He denied owing anything for drilling of the second well, because it was drilled with a rotary outfit, not in accordance with the contract; but, in any event, claimed that he should only be charged for $3 per foot for this well and allowed credit thereon for $3,500 paid on the first hole.

In response to special issues, the jury found: (1) That Lankford agreed to pay the drilling company $5.50 per foot for drilling a well on defendant's lease to 1,400 feet; (2)

that plaintiffs substantially performed such contract by drilling the well with rotary tools to such depth; (3) that Lankford agreed to pay for the drilling of the offset well, drilled with rotary tools, at $3 per foot; (4) that the drilling company used an unreasonable and unnecessary amount of fuel, oil, and water in drilling the first well with cable tools, and defendant sustained damages thereby to the amount of $4,300; (5) that defendant accepted the 1,400-foot well after it was drilled, and employed plaintiffs to drill it still deeper. Judgment was rendered for the plaintiffs for the sum of $2,771.71. This was made up of the principal claim for $4,203, added to items for other work and material, aggregating $2,752.15, about which there is no controversy, and $116.56 interest (it is said) deducting from such total the sum of $4,300 damages allowed defendant.

[1] The first proposition is that the judgment, instead of being for the plaintiffs, should have been for the defendant, for the sum of $844.85. This proposition is based on the contention that plaintiffs should not be allowed anything on account of drilling the first hole and that they should be paid for the second well at $3 per foot, and the $3,500 paid by Lankford on the first well be credited on this amount. To sustain the first premise of the proposition stated, the appellant quotes the following from the testimony of one of the plaintiffs:

"As to drilling the second hole, I will say that I had to do that to complete my contract. When you make a contract you have to risk getting the hole down. If you lose the first hole you have to make another or lose what you made in the first hole."

The second premise of the proposition is claimed to be supported by the finding of the jury that the second well was drilled at an agreed price of $3 per foot. The effect of the finding that the defendant agreed to pay $3 per foot for the drilling of a 1,400 foot well with rotary tools must be determined in connection with the other findings of the jury and the issues as made by the evidence. No one contended at the trial that there was a contract to drill the second well except by way of complying with the terms of the first contract. The plaintiff was contending that he was thereby complying with his first contract. He testified that the log of the first well drilled with cable tools located the sands and that the rotary tools could be used to just as good advantage as cable tools in drilling the substitute well only a few feet away; that "Schultz (Lankford's agent) told me the best thing was,

figuring about the price, was to make this well (that is, the second well) for about $3, so it would be about the same price as the old well." On completion of the second well plaintiffs presented to the defendant's agent, Schultz, a bill, as follows:

To drilling well No. 5, Barcheldt farm, 1,401
  feet, at $5.50 per foot....................... $7,705 50
Paid May 3, 1920.............................. 3,500 00
                                              _____
  Balance due ........................ $4,205 00

Defendant's agent, Schultz, made this memorandum on this bill:

"No. 5 was completed at 856 feet and paid for. The balance of the hole was lost by junk. No. 5 offset was drilled to 1,401 feet at $3 per foot, with rotary drill, $4,203. O. K. Schultz."

It is evident from this statement, in connection with the findings, that the jury were finding that the $3 per foot was agreed to be paid for the second well in addition to what had been paid on the other well as a settlement of the contract for drilling a well 1,400 feet deep at $5.50 per foot. Three dollars per foot on 1,400 feet, added to the $3,500 paid on the first well, comes to the same thing as 1,400 feet, figured at $5.50 per foot. So it makes no particular difference, so far as the amount of the judgment is concerned, whether the second well be regarded as being drilled in fulfillment of the first contract or whether the first contract was settled by the payment of the $3,500, and the agreement to drill the second well at $3 per foot. We therefore overrule this proposition. This conclusion is also decisive of the second proposition, which we also overrule.

[2] We find no reversible error in the refusal to submit an issue as to whether the plaintiffs drilled a well for defendants within a reasonable time. There was no claim that the second well was not completed within a reasonable time after it was begun. The delay was in working with the first well before it was abandoned. For this delay defendant was allowed damages. He accepted the second well, and if this issue had been submitted to the jury and answered in the affirmative defendant would not have been entitled to a different judgment.

[3] We think the first and third issues submitted by the court sufficiently submit the controversy as to the amount that, under the first agreement, was to be paid for the drilling of a 1,400-foot well, and there was no necessity for the submission of the special issue referred to in the fourth proposition.

Affirmed.