James A. MATTHEWS et ux., Appellants,

v.

FIRST STATE BANK, Appellee.

No. 6165.

Court of Civil Appeals of Texas.

Beaumont.

April 10, 1958.

Rehearing Denied April 23, 1958.

Magus F. Smith, McAllen, and W. H. Wren, Hamilton, for appellants.

Cain, Taylor & Cain, Liberty, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in the district court of Liberty County in favor

of the appellee, First State Bank, and against the appellants, James A. Matthews and wife, Nannie Lou Matthews.

■ Appellants, Mr. and Mrs. Matthews, on March 14, 1955 were the owners of lot No. 16 of Treetop Terrace, a subdivision in Liberty County, Texas, near the City of Liberty. On that day they entered into a contract with L. D. Allen whereby Allen agreed to build a house for them on said lot for a contract price of $9,500, which was to be paid in the following manner: $500 to be paid when the work on the house was completed and accepted and $9,000 by a note in that amount bearing six percent interest, payable in monthly installments of $75.95 each, such payments including both interest and principal. The contract recited a lien in favor of the contractor, a mechanics' and materialmen's and laborer's and contractor's lien to secure both the $9,000 note and the $500 to be paid upon completion. It was agreed that the $500 indebtedness was inferior to the $9,000 note as to priority of liens. The contract provided that the note could be assigned. It also provided that failure to complete the improvements should not defeat the indebtedness and lien, but that the indebtedness and lien shall exist in favor of the contractor, his heirs and assigns, for the contract price, less such an amount as would be reasonably necessary to complete said improvements. The building contract recited that the contractor agreed to build the additional improvements on the property in accordance with the plans and specifications agreed upon between the parties, but such plans and specifications were not made a part of the contract which was filed of record.

The $9,000 note was transferred and assigned to the First State Bank by delivery and with the following endorsement: "March 14, 1955, pay to the order of the First State Bank, Liberty Texas. Allen Construction Company by L. D. Allen." For this assignment the bank paid Allen $5,400.

Allen, the contractor, began construction of the house, and after about 60 days of construction he stopped work on the house, told Matthews he was leaving and he was not coming back. He did no more work on the house. The house remained unfinished for about five months. Matthews then approached the bank several times to see what could be done about finishing his house. Matthews then discovered, upon reading his contract, that he had the right to go in there and finish his house and deduct from the contract indebtedness what he spent on it to finish it. He then began negotiations with appellee bank about such completion.

After the completion of such negotiations appellants, Mr. and Mrs. Matthews, entered into another building construction contract on October 24, 1955 with S. Norris Rowland, a building contractor, for the completion of their house. This contract recited the prior building contract between Allen and Mr. and Mrs. Matthews, the assignment of the note to the appellee bank, the failure of Allen to fully complete the building, and the desire of Matthews and wife to extend the $5,400 indebtedness held by the bank, together with all liens securing it, the provisions in such prior agreement permitting the owners to complete the building in event of failure by the original contractor, the expenditure by Mr. and Mrs. Matthews of $786 toward the completion of the building and advancement to them of such amount by the appellee bank. Mr. and Mrs. Matthews and Rowland, the second contractor, agreed that Rowland would complete the building according to plans and specifications attached to said agreement, free and quit of any and all liens for material and labor used in or performed upon said building. Matthews and wife agreed to pay to the order of appellee First State Bank $2,872.50 for the execution of said building contract. Said indebtedness bore interest at the rate of six percent and was payable $25 per month, beginning March 25, 1956, the payments to include both principal and inter-

est. The agreement also recited the assignment of $2,872.50 indebtedness obligation to the appellee bank. It also recited the execution of another of $786 by Mr. and Mrs. Matthews, payable to appellee bank, as follows: $500 on October 25, 1955 and $75 per month, including principal and interest.

On October 24, 1955 appellants Matthews and wife, executed a note payable to the appellee bank in the sum of $5,589 payable in monthly installments of $50, beginning March 25, 1956. The note recited that it was an extension and renewal of the L. D. Allen note which had been assigned and transferred to appellee bank.

On the same day, October 24, 1955, appellants, Mr. and Mrs. Matthews, executed another note payable to the appellee bank in the sum of $2,872.50, bearing six percent interest and payable $25 per month, beginning March 25, 1956, such payments including both principal and interest. The note recited that it was given in payment of labor and material furnished and used in the completion of their house in a contract between themselves and S. Norris Rowland, contractor, such contract being of the same date as the note.

Contractor Rowland completed building the house, and during such period of construction all bills for labor and material for the completion of the job were paid by checks jointly signed by either Mr. or Mrs. Matthews. Mr. and Mrs. Matthews moved into the house and lived in it as their home. They made payments on the notes and contracts, paying the $500 payment on the back contract and made monthly payments according to the extended note and the new note for several months. The $786 note mentioned in the Rowland contract was paid off in full and the note was given to Mr. Matthews. They paid a total of $1,245 to the bank after moving into the house. This represented $786 in discharge of the above mentioned note and $423.04 interest and $35.96 on the principal of the other two notes. No payments were credited on said note after August 25, 1956. After they were seven months delinquent in their payments, Mr. and Mrs. Matthews notified the bank that they did not intend to pay the notes. On January 9, 1957 the bank declared the notes due in their entirety and demanded payment. Suit was filed January 31, 1957 for the unpaid balance on the notes, interest and attorneys' fees and for foreclosure of the liens securing said notes.

The appellants answered by general denial. They also answered by special answer, alleging that the appellee should not recover because the original contractor, Allen, failed to perform his contract and did not pay numerous laborers and mechanics who worked in the construction of said building. They alleged that numerous laborers and materialmen had filed purported mechanics' and materialmen's liens on their property and have clouded the title to said property. They alleged that upon execution of the agreement with the second contractor, Rowland, to complete the contract upon the execution of the "purported renewal and extension agreement" the plaintiff bank agreed that it would secure releases of all encumbrances of such laborers and materialmen if the appellants would enter into such agreement with Rowland and would execute such extension agreement. They alleged that, relying upon such agreement by the bank, they entered into the contract with Rowland and executed a renewal and extension agreement with the bank, and that without such promise they would not have entered into such contract. They alleged that the bank is bound by the terms of the original contract with Allen and is obligated by reason of said misrepresentations and promises to remove such encumbrances. They further alleged that the premises described in the petition is the homestead of the appellants, and that the purported lien of the bank is void for failure to comply with the homestead laws of the State of Texas. They alleged that such purported liens of the plaintiff bank

and the purported mechanics' and materialmen's liens filed were clouds upon their title. They further alleged that the appellee bank, by the use of false promises, representations and statements, defrauded them into signing the said purported renewal and extension agreement and new note and contract, said false promises and statements being that the note and mortgage between them and Allen was good, effective and binding, and the appellants would lose their property and that the bank would discharge all liens and encumbrances on such property and furnish the appellants good and merchantable title. They further alleged that the contract between them and Allen was never completed and no lien was ever attached and no notes ever became due and payable, and the same failed for lack of consideration, because of Allen's failure to complete the building according to plans and specifications, free and quit of all liens. They further alleged that the contract between them and Rowland did not complete the original contract with Allen, and, therefore, neither of said contracts is effective to attach any lien on their property. They further alleged that the contract between them and contractor Rowland was never completed and that the same was procured by false and fraudulent representations on the part of the bank. They further alleged that both contracts were for the construction of said building free and quit of all liens for material and labor, but said property is now burdened by numerous claims for material and labor and that the same have not been discharged and that any rights that the appellee bank or any parties may have have not accrued and the same have wholly failed. They further alleged that appellee bank had full knowledge of the fact that their house was not completed or even started at the time said note was assigned to it, and that at the time of the alleged renewal and extension of the new contract the bank knew the original contract was not complete and that numerous persons were claiming liens upon the property.

In the alternative and by way of cross action, counterclaim and setoff, in the event the courts should find that they and their property are obligated by reason of any or all of said liens, notes, renewals, and extensions they alleged that the appellee bank was the alter ego of Allen in said contract and project; and because of Allen's assignment of all his rights and obligations to said property and contract to the appellee bank, it is obligated to pay to them by way of offset the sum of $4,000, being the total amount of all labor, materials and supplies that is due or may be due to the claimants by Allen, and because of the fact that the said property has not been completed according to plans and specifications, but has been constructed differently and is worth less than if it had been constructed according to plans and specifications in the amount of $2,500, and they alleged that any judgment which may be obtained by the bank should be offset in said amounts.

The appellee bank filed a supplemental petition, which consisted of special exceptions to portions of the answer and a general denial of all the allegations of the appellants. It further specially answered and alleged that at and prior to the time of the execution of the renewal and extension agreement between the parties, and at and prior to the completion agreement between Rowland and the appellants, the appellants by their representations and conduct led the appellee to believe that the mechanic's and materialman's and laborers' and contractors' liens executed by the appellants to Allen and to Rowland, the bank's assignors, were valid and subsisting liens and that they constituted valid liens on the homestead to secure the payment of the notes assigned to the appellee bank, which representations and conduct induced the appellee to invest its funds; that the appellee invested its funds on faith and credit of such liens and that appellee would not have invested its funds used in the construction of appellants' homestead if it

had known that they were asserting any invalidity of such liens; that the appellants had been in actual physical possession of said property at all times material, making payments on the notes owed to the appellee; that appellee purchased said notes in good faith before maturity, and by reason of such representations and conduct of the appellants they are estopped to plead the invalidity of said liens.

The case went to trial before the court with a jury and at the conclusion of the evidence the appellee bank filed its motion for instructed verdict, or in the alternative that the court withdraw the case from the jury and render judgment for it. Such motion was based upon the following reasons included in said motion:

"1.

"For the reason that the proof has conclusively shown that the lien contract between James A. Matthews and wife, and S. Norris Rowland, and the extension of the note assigned to The First State Bank by L. D. Allen executed by James A. Matthews and wife, is valid and subsisting in all things, and that the note in the amount of Five Thousand Five Hundred Eighty Nine ($5,589.00) Dollars, and the note in the amount of Two Thousand Eight Hundred Seventy Two and 50/100 ($2,872.50) Dollars, each payable to The First State Bank, the plaintiff, and mentioned and set out in the aforementioned contract, are now in default, after proper demand having been made by the plaintiff on James A. Matthews and wife for the payment of same.

"2.

"For the further reason that the evidence has conclusively shown that The First State Bank was an innocent purchaser, for value, of the original lien of the said L. D. Allen, and that the extension of such lien to cover Fifty Four Hundred ($5,400.00) Dollars, assigned by L. D. Allen to The First State Bank, set out in the above mentioned Rowland contract, acted as a ratification, exten-

sion and approval by the defendants herein, James A. Matthews and wife, of such Allen contract lien and the assignment thereof unto the bank, and amounts to an estoppel as against James A. Matthews and wife, to now claim invalidity of the assignment by L. D. Allen to The First State Bank.

"3.

"For the further reason that the evidence conclusively shows that James A. Matthews approved each and every item to be performed by S. Norris Rowland under the aforementioned Rowland contract, as having been completed and paid, and therefore, ratified, confirmed and affirmed each of such thereafter.

"4.

"For the further reason that the evidence also conclusively shows that James A. Matthews and wife accepted the house as completed, by moving into the home and thereafter, for many months, without dissent or complaint, making payments on each of the notes of the plaintiff, which amount to and act as ratification, confirmation and affirmation of the Rowland contract and the original Allen contract, and now estop, at this late date, these defendants from claiming invalidity of the notes and the liens securing same, of the bank.

"5.

"For the further reason that the defendants have introduced no evidence whatsoever, to cast even a cloud of invalidity upon either of the aforementioned notes or the liens securing same in any fashion whatsoever.

"6.

"For further grounds, plaintiff would show that the undisputed evidence in this case, shows that James A. Matthews and wife represented that the said Mechanic's and Materialman's lien notes for improvements, were valid, and thereby induced plaintiff, The First State Bank, as an innocent third party, to invest funds, as represented by said notes, on the faith and credit of the validity of such liens, and James A.

Matthews and wife are now estopped, as a matter of law, as to the plaintiff, The First State Bank, to plead that said liens are invalid.

"7.

"For further grounds, plaintiff would show that the evidence is undisputed that James A. Matthews and/or his wife, endorsed the checks to the contractors, participating in the closing act whereby said money was obtained, and further, retained and enjoyed the benefits of said contract at all times material hereto up to this date, and it is settled, as a matter of law, that such acts amount to a reaffirmation of good faith as to all that had preceded and which was consistent with the idea that the Mechanic's and Materialman's lien contracts were valid.

"8.

"For further grounds, plaintiff would show that even if the liens were invalid, which is denied, plaintiff is entitled to recover as a bonafide purchaser, for value, without notice of any infirmatives in said notes at the time of extending credit thereon to the defendants."

The court granted the above motion, withdrew the case from the jury and rendered judgment for the appellee bank for the sum of $8,425.54 as principal, $380 interest and $863.26 attorneys' fees with six percent interest from the date of the judgment and all costs of the suit. The judgment foreclosed the Mechanic's lien and contract lien in the amount of $8,805.54 representing the principal and interest due. The judgment further denied the appellants any recovery on their cross action, counterclaim and setoff. The appellants have duly perfected their appeal to this court.

The appellants bring their appeal under 14 points of error. By their first six points, which they present together, the appellants say that the trial court erred in rendering judgment for the appellee and in not rendering judgment for them because (1) the uncontradicted evidence showed that the property was not free and quit of all liens for material and labor, (2) the pleadings and the evidence conclusively showed that the contractors breached their contracts by not completing the same free and quit of all liens for material and labor, (3) the appellee failed to show performance of the contract for improvements upon the appellants' homestead, (4) contractors failed to perform their statutory duty to defend and protect appellants from liens filed under Chapter 2, Title 90 of the 1925 Revised Civil Statutes of Texas, Vernon's Ann.Civ.St. art. 5452 et seq., (5) because the appellee failed to show that the contractors had performed their contracts by paying all expenses incident to the furnishing of labor and materials, (6) the failure of Allen, the appellee bank and Rowland to pay all claims and bills for labor and materials and to furnish proper acquittances of those liens was a substantial breach of both contracts and would defeat the bank's right to recover.

By their 7th point they contend that the trial court erred in excluding the testimony of James A. Matthews that the appellee's attorney and its President promised to clear his title of all liens and claims of laborers and materialmen prior to the execution of the renewal contract, and their further contention being that such was a false promise and was a material representation relied upon by them.

By their 8th point they say the trial court erred in excluding such testimony of Matthews because such promise was the consideration for the execution of the renewal contract.

Their 9th point is that the appellee bank failed to prove the amount that would be required to complete the contract according to the plans and specifications, and, therefore, the trial court erred in rendering judgment for the appellee.

By their 10th and 11th points they contend that L. D. Allen and S. Norris Rowland were necessary and indispensable parties to this suit and its failure to make them parties

requires that the judgment should be reversed and rendered.

By their 12th point they contend that the various persons and companies who filed mechanic's and materialmen's liens were not made parties to the suit by the appellee; that they were necessary and indispensable parties and appellee's failure to make them parties "should render the case."

There is no 13th point set out in their brief.

Their 14th point is that the court erred in rendering a personal judgment against the appellant, Nannie Lou Matthews, a married woman, and their 15th point is that the court erred in ordering foreclosure of a lien on the homestead for attorneys' fees.

Appellants' first six points are presented together in appellants' brief and we so consider them. They all deal with the contention of the appellants that the trial court erred in rendering judgment for the appellee because of the failure of the evidence to show that the building contracts of Allen and Rowland had been performed, and that the building has been completed free and quit of all liens for materials and labor. These points do not present error and they are overruled. In the first place, the bank, as assignee of the note and lien from Allen, did not assume the burdens of Allen's contract with the appellants. When Allen abandoned the contract with the house not completed the appellants, under the right granted to them in the building contract with Allen, undertook to complete the building as best they could, with the knowledge that whatever expenditures they made in so doing would reduce the amount of their indebtedness on their contract and note by the amount of such expenditures. It was for this purpose that the new contract with Rowland was made and appellee bank not only advanced the funds for Rowland's completion of the building, but also advanced to Matthews additional money for purchases and expenditures made by him in finishing the building of his house. The parties to the second contract, that is, the completion contract with Rowland, set out and agreed in detail in their contract upon just what work was to be done. When Rowland agreed in such contract to finish the building according to the plans attached to such contract and pay all expenses for labor and materials, such agreement was, of course, for the labor and materials which he put on the building under the building contract made with the appellants. Undoubtedly if the parties had intended that as part of Rowland's completion agreement he was obligated to pay off any labor and materialmen's liens which had become due under the Allen construction work, the parties would have so stated in the contract. The appellee in this suit was under no obligation to show that the house was completed in all details in accordance with the original plans and specifications of the Allen contract. The evidence shows without dispute that the appellants agreed to various changes and substitutions of work and materials in the completion contract with Rowland. It also shows that the appellants accepted the completed job and moved into the house and made substantial payments on the discharge of the renewal contract and notes and the completion contract. See Continental National Bank of Fort Worth v. Conner, 147 Tex. 218, 214 S.W.2d 928; Robinson v. Leach, Tex.Civ.App., 237 S.W.2d 366.

We believe the evidence shows a substantial completion of the Rowland completion contract and acceptance of it by the appellants; that the appellee bank was the holder in due course of the original note; that the renewal agreement and notes were made upon representations by the appellants to appellee of the validity of the notes and liens and that they are in no position to assert any invalidity thereof.

By their 7th and 8th points the appellants complain of the trial court's exclusion of the testimony of Mr. Matthews that the bank fraudulently promised to clear the title of all liens of laborers and materialmen.

The testimony offered and excluded by the court, was that of the appellant James A. Matthews in which he testified, in substance, that before and at the time of the execution of the renewal agreement with the appellee bank, the bank assured him that it was guaranteeing to take care of all existing liens, "pay off all existing liens and guarantee me a clear title." In connection with this tender of evidence, the appellants offered evidence to show that nine different liens for labor and materials had been filed upon the property in suit between June 21, 1955 and October 12, 1955. All of such liens arose out of construction work done on the house by Allen. Mr. Matthews testified that but for such oral promise by the bank to pay off and discharge the unpaid liens contracted by Allen, he would not have signed the renewal contract and notes.

The question therefore presented is whether the trial court properly excluded such evidence as being an attempt by parol testimony to vary the terms of a written instrument.

In Texas Law of Evidence by McCormick & Ray, 2nd Edition, paragraph 1601, et seq., is found a thorough discussion of the parol evidence rule, its basis and application. We will not set out the extensive discussion of the rule with quotations from cases which are contained in this valuable work. But in paragraph 1613 of that work the author states a summary of the various decisions to be that on principle, a recital of past consideration received may always be varied by showing that the past facts as to what was actually received, were different; but whether promises not shown in the instrument may be relied on depends on an entirely different question, that is, on whether the instrument as a whole appears to be a complete expression of the transaction. Cited in the notes under paragraph 1613 is Chalk v. Daggett, Tex.Com.App., 257 S.W. 228, 230. There the makers of notes sought to defeat a recovery on the notes on the ground that it was orally agreed when the notes were made and as part of the consideration for them that the notes should not be collected until an accounting should be had and that such an accounting had never been had. In overruling the contention, the court in an opinion by Judge Stayton, said: "The suggestion, upon the cases of Clayton v. Western National Co., Tex.Civ.App., 146 S.W. 695 and Watson v. Rice, Tex.Civ.App., 166 S.W. 106, that the obligation to pay as contained in a promissory note may be varied by parol agreement, because such an agreement constitutes a part of the consideration, is thought to be erroneous. A written promise to perform in the future, whether by money or in services, is a contractual consideration which, unlike one that is not mentioned or is mentioned merely as a receipt or by way of acknowledgment of something performed in the past, cannot be set aside on any different principle from that applicable to other material future undertakings expressed in the written contract." See, also, Cooley v. Cash, Tex.Civ. App., 207 S.W.2d 436, which holds that an alleged oral agreement by the assignee of a mechanic's lien note to pay materialmen for materials furnished in the construction of a house was unenforcible as contravening the statute of frauds. We think it apparent here that the renewal contract between the parties is a complete expression by the parties themselves of their contract. Since the parol evidence offered contained an additional promise of performance on the part of the appellee bank in addition to the promises contained in the original instrument, the trial court properly excluded the same under the parol evidence rule. These points are therefore overruled.

Appellants' 9th point, contending that judgment for the appellee was error because the appellee bank failed to prove the amount that would be required to complete the Allen contract according to plans and specifications, presents no error. The appellants recognized that Allen had abandoned his contract and they undertook to complete it themselves. They made a new contract with appellee bank to provide the funds,

made a new contract with Rowland to complete the building in a way satisfactory to themselves, and they accepted the completed building from Rowland. There was evidence in the record as to the percentage of completion of the building at the time the appellants undertook to finish it and the cost of the various items of work and material placed upon the building under the completion contract with Rowland. Under the circumstances this was all the appellee was required to do. This point is overruled.

■ Under their 10th and 11th points the appellants complain because L. D. Allen and S. Norris Rowland, the two contractors, were not made parties to the suit. This question is raised by them for the first time on appeal. They made no effort in the trial court to have either one of the contractors made a party to the suit and made no objection, either by exception or plea in abatement, to the absence of either one as a party. Under these points in their brief they contend that the original note executed by the appellants, payable to Allen, was not assigned to appellee bank but was merely pledged to secure the bank's loan to Allen of $5,400. They say that this pledge was not foreclosed and therefore Allen still had an interest in the note. The unconditional endorsement and assignment of the note to the bank by Allen appears to negative this contention. There is nothing in either the pleadings or the evidence which suggests that Allen has claimed or is claiming any interest in the note or lien sued on by the bank. From the additional facts in evidence regarding Allen's conduct in regard to abandonment of his building job and disappearance from the scene, it is difficult to imagine any facts which he could assert in this case upon which he could recover any interest in the note or lien. However, since Allen made an unconditional endorsement of the note to the bank, and it is the holder of such note and lien, it may maintain its action for foreclosure without joining Allen as a party. All the matters at issue between the appellee and the appellants could be and were decided by the court without any reference to any decision upon any possible right which Allen himself may have had. Allen had no right or interest in the subject matter of this litigation which would be directly affected by the adjudication. See McDonald's Texas Civil Practice, Vol. 1, Sec. 323, et seq.

Rowland likewise was neither a necessary nor an indispensable party to the adjudication of the rights of the appellants and appellee. The evidence showed that Rowland had completed his contract and paid all claims for materials and labor, and had delivered the completed building to appellants and they had accepted it. Nothing which Rowland could have asserted or claimed in the premises could have affected the controversy between the appellee and the appellants.

■■ Appellants' 12th point complains that the persons who filed mechanic's and materialmen's liens against their property for claims arising under construction work done by Allen were necessary and indispensable parties to the suit and were not made parties by the appellee. This question was also raised for the first time on appeal by the appellants. The proof in the case did not establish the validity of any of the liens shown to have been filed. It merely showed that such liens had been filed. If such various parties did have valid mechanic's and materialmen's liens under Allen's contract, their liens are all of equal dignity with that of the bank's lien which it acquired by the assignment of the note from Allen. They are all of equal dignity and relate in point of time to the date of the building contract between the appellants and Allen. Had they desired to intervene in this suit and assert their liens they would have been proper parties. Had the appellants pointed out to the trial court the fact that such claims were being made and had alleged the validity of such liens, the court would probably have made them parties. They are, however, not necessary parties to this suit be-

tween the appellee bank and the appellants. See Pierson v. Pierson, 136 Tex. 310, 150 S.W.2d 788; Wier v. Yates, Tex.Civ.App., 237 S.W. 623. Where there are several liens of equal rank, the owner of either one may foreclose his lien and the other owners of equal liens are not indispensable or necessary parties. The purchaser upon the resulting foreclosure sale, in a later suit against him by the other lien holders, may elect either to pay as successor to the equity of redemption or set up any priorities for other equities or defenses he may claim, as their various interests may appear. Likewise as to the foreclosure of the note and lien assigned to the appellee bank by Rowland, the owners of any valid liens filed may litigate with the purchaser at the foreclosure sale in this suit and establish their priorities, if any. If they should be shown to be senior lien holders in such later suit, their rights will not be affected by the judgment in the instant case. They were not necessary or indispensable parties to the present controversy between appellants and appellee. Since the appellants took no steps in the trial court to make these persons parties, they have wavied such joinder.

■ The appellants' 14th point complains of the action of the trial court in rendering a personal judgment against the appellant, Mrs. Matthews, since she was a married woman. The appellee contends in answer to this point that it was stipulated that the house was built as the homestead of the appellants, therefore the note signed by the appellants was for necessaries for the family. There is no mention whatever in the pleadings of either the appellants or appellee indicating that the debt and lien were created for the purpose of building a home for the appellants. Under the authority of Giles v. First National Bank, Tex.Civ.App., 257 S.W.2d 945, when the appellee's pleadings alleged that Mrs. Matthews was a married woman and did not plead that the debt was contracted for the benefit of the

wife's separate property or for necessaries, or any other fact that would authorize a personal judgment against her, the rendition of judgment against her personally was error. Indebtedness represented by the note in question is the joint obligation of both husband and wife and is a community debt for which the husband alone can be made personally responsible or liable by judgment, but the debt cannot be collected out of the separate estate of the wife other than to foreclose the lien upon the property involved. The authorities cited require the reformation of the judgment of the trial court insofar as it awards a personal judgment against Mrs. Matthews. The judgment of the trial court is accordingly reformed that the appellee take nothing as to its suit for personal judgment against Mrs. Matthews, but the judgment of the trial court is correct in decreeing judgment against James A. Matthews for the debt and foreclosure of the lien against both Mr. and Mrs. Matthews.

By their 15th point appellants contend that the trial court erroneously ordered foreclosure of the lien on the homestead for attorneys' fees. A reading of the judgment discloses that no such provision is contained therein. It specifically decreed foreclosure of the appellee's lien in the amount of $8,805.54, representing principal and interest due. We think it plain from the wording of the judgment that the order of sale directed the sheriff or the officer executing it to sell the property described in the judgment as under execution and satisfaction of the judgment, ordering him to sell in satisfaction of the judgment for $8,805.54. Believing that the judgment is not subject to the construction placed upon it by the appellants, this point is overruled.

The judgment of the trial court is reformed as above indicated and as reformed is affirmed. The costs of the appeal are taxed against the appellants.