**TRITON OIL AND GAS CORPORATION, Appellant,**

v.

**E. W. MORAN DRILLING COMPANY, Appellee.**

No. 17487.

Court of Civil Appeals of Texas, Forth Worth.

April 26, 1974.

Rehearing Denied May 24, 1974.

Roach & Robertson, Dallas, Sherrill, Pace & Rogers and Lonny D. Morrison, Wichita Falls, for appellant.

Vial, Hamilton, Koch, Tubb, Knox & Stradley, Robert G. Vial and Paul D. Schoonover, Dallas, Sanders, Masters & Watson and Marvin H. Brown, Wichita Falls, for appellee.

## OPINION

LANGDON, Justice.

This appeal arises out of a damage suit brought by E. W. Moran Drilling Company, drilling contractor, appellee and plaintiff below, for breach of a contract to drill a well, complaining of Triton Oil and Gas Corporation, owner, appellant, defendant and cross-plaintiff below. Plaintiff also sued alternatively for quantum meruit recovery. Defendant Triton counterclaimed against plaintiff on theories of breach of contract and negligent performance. After lengthy trial, the jury answered sixty (60) special issues (less those conditionally submitted, e. g.: quantum meruit) in favor of plaintiff without a conflict. Based on such verdict the trial court rendered judgment for plaintiff in the total sum of $312,052.-94, plus appropriate interest, including the following:

(1) $193,583.25 for footage basis drilling;

(2) $58,573.00 for day work performed in an effort to restore normal drilling operations pursuant to paragraphs 5.1 and 13.2 of the drilling contract;

(3) $28,159.52 for services performed and equipment furnished and/or lost while performing day work; and

(4) $31,737.17 for third-party services furnished during day work.

This appeal from such judgment is based upon four points of error.

We affirm.

The parties will be referred to as plaintiff and defendant.

The defendant by its first point contends that the court erred in failing to include in its charge to the jury an issue with respect to the performance of each and every condition precedent to the plaintiff's right of recovery.

Under this point the defendant restricts its argument to the contention that plaintiff did not maintain the mud weight as agreed; that this could have contributed to the difficulties encountered, that maintenance of the drilling mud is a condition precedent to plaintiff's right of recovery; and that having obtained no special issue of performance of such condition precedent, plaintiff's judgment should not be allowed to stand.

Pursuant to the contract in controversy, defendant, as owner, engaged plaintiff, as contractor, to "drill the hereinafter designated well in search of oil or gas." Generally, the contract obligated plaintiff to drill to the depth of 15,000 feet or fifty feet into a certain geological formation, whichever depth was first reached. While the principal method of compensation for plaintiff was per linear foot of hole drilled, the contract obligated defendant to pay plaintiff on a "day work" basis at a certain rate, if plaintiff encountered certain geological formations difficult or hazardous to drill.

Plaintiff was engaged in drilling operations on behalf of defendant for a total of approximately five (5) months. Until July 30, 1972, plaintiff conducted most of its drilling operations on a footage basis. On or about such date, plaintiff encountered heaving shale, or other similar formation, which precluded drilling ahead under reasonably normal procedures. This contingency was covered by Paragraph 13.2 of the contract, which provides in part that ". . . When such condition is encountered, further operations shall be conducted on a day work basis at the applicable day work rate until such conditions have been overcome and normal drilling operations can be resumed. Owner shall assume the risk of loss of or damage to the hole and to Contractor's equipment in the hole from the time such condition is encountered. The footage drilled while on day work basis shall be deducted from the footage charge."

After July 30, 1972, plaintiff was temporarily able to resume normal drilling procedures, but on numerous occasions continued to encounter the heaving shale, until on or about August 30, 1972, when the drill pipe became stuck and subsequent efforts to resume normal drilling operations failed. After each encounter of heaving shale, plaintiff exerted every reasonable effort to overcome the difficulty. Plaintiff kept defendant apprised of the situation, and made demand upon defendant to perform its day work obligations under the contract. On October 2, 1972, pursuant to Paragraph 5.1 of the contract, plaintiff invoiced defendant for the "substantial amount" of day work performed in an attempt to resume normal drilling operations, and for other expenses due under the applicable day work contract provisions. Defendant gave plaintiff notice of its intention not to pay the invoice, thereby materially breaching the contract and excusing plaintiff from the duty of further performance. Further, defendant denied an obligation to pay plaintiff any sum in consideration of the drilling of the well.

The drilling contract expressly speaks to the obligations of both plaintiff and defendant with respect to the drilling mud to be furnished and used in the drilling operations. It requires that drilling mud, chemicals, lost circulation materials and other additives, as well as mud logging services, shall be furnished and provided at the location at the expense of defendant. Defendant's rights regarding the drilling mud and the drilling mud program are expressed in Paragraph 10.3 of the drilling contract: ". . . at all times during the drilling of the well, Owner shall have the right to control the mud program, and the drilling fluid must be of a type and have characteristics acceptable to Owner . . . ."

Under Paragraph 10.3 of the contract, the obligation of plaintiff is also expressed: ". . . and the drilling fluid must . . . be maintained by Contrac-

tor in accordance with the specifications shown in Par. 2 of Exhibit 'A'."

The evidence is that defendant furnished the drilling mud on the well through Baroid, a mud service company, and Baroid's employee, Max McCreight, a mud sales engineer. McCreight, who was on location at the well almost daily, performed his usual functions. He regularly prepared a report known as the Drilling Mud Report.

McCreight's Drilling Mud Reports contained the results of McCreight's daily testing and sampling of the mud properties. Such reports also informed defendant of the cost to defendant, both daily and cumulatively, of the drilling mud which defendant was furnishing through Baroid. The reports also contain detailed instructions to plaintiff regarding maintenance by plaintiff of the drilling mud.

McCreight's reports contained his direction to plaintiff on how to maintain the drilling mud.

Plaintiff followed the recommendations of defendant's mud service engineer, regarding maintenance of the drilling mud and each day tested the drilling mud to make certain that it was being maintained as directed.

Not only did plaintiff attest to its maintenance of the drilling mud but also Max McCreight, the mud sales engineer hired by defendant, testified that plaintiff was very cooperative regarding the mud program.

■ We find and hold that the plaintiff proved that it substantially performed the drilling contract in a good and workmanlike manner with due diligence and care, and established its right to contract damages from defendant. The legal result of the finding of such fact by the jury was that any failure to perform by plaintiff (be it maintenance of the mud or other covenant) was not a failure to perform the drilling contract in its essential points, or, stated conversely, that plaintiff did not materially breach the drilling contract. Plaintiff proved the performance of all express conditions precedent to its entitlement to day work compensation; and by proving substantial performance, plaintiff proved sufficient performance of the drilling contract generally to recover contract damages. We find and hold that the trial court's charge to the jury included issues with respect to the performance of all conditions precedent to the plaintiff's right of recovery.

■ The record conclusively demonstrates that plaintiff maintained the mud as required by the contract, and that the submission of an issue inquiring as to such performance would not have been proper, and therefore, its omission is not error.

■ The applicability of the substantial performance doctrine to drilling contracts is unquestioned: "Where a driller has substantially performed his duties as prescribed by the contract, he is entitled to compensation therefor in accordance with the provisions of the contract." 4 Summers Oil and Gas, § 687, at p. 186. Early Texas cases evidence submission of the ultimate special issue of plaintiff's substantial performance of the drilling contract. Lankford v. Jetter Drilling Co., 251 S.W. 587 (Amarillo, Tex.Civ.App., 1923, no writ hist.).

To recover on the drilling contract, as stated above, plaintiff was required to prove that it substantially performed the contract in a good and workmanlike manner with due diligence and care. This is Special Issue No. 26 verbatim. The issue was answered in favor of plaintiff. Defendant has not challenged this issue and finding. But the affirmative answer to Special Issue No. 26 did not completely resolve the case. Because plaintiff sued to some extent for day work rates, it was incumbent upon plaintiff to prove all express conditions precedent to defendant's liability to pay such rates. The day work provisions in the contract are clearly conditions,

using the phrase "in the event that." Thus, in addition to overall substantial performance, plaintiff was required to prove under Paragraphs 13.2 and 5.1 of the contract the following:

(a) That it encountered "heaving shale or other similar formation, . . . which makes drilling abnormally difficult or hazardous, causes sticking of drill pipe or casing, or other similar difficulty which precludes drilling ahead under reasonably normal procedures";

(b) That without undue delay, it exerted "every reasonable effort to overcome such difficulty";

(c) That it performed and billed defendant for a "substantial" amount of day work; and

(d) That defendant refused to pay.

Special Issues Nos. 1 through 25, answered favorably, established conditions (a) and (b). Conditions (c) and (d) were uncontroverted and conclusively established by the evidence.

At this point, plaintiff had proven its right to contract damages and plaintiff was not required to prove maintenance of the mud as an element of its cause of action. The trial court submitted the case at bar in a manner almost identical with that approved in Tenneco Oil Company v. Padre Drilling Company, 445 S.W.2d 247 (Waco, Tex.Civ.App., 1969, affirmed at Tex.Sup., 453 S.W.2d 814, 1970). The trial court correctly rendered judgment on the contract for plaintiffs.

Under the evidence, the trial judge was not required to submit defendant's tendered Special Issue inquiring whether plaintiff "failed to maintain the weight in the drilling mud between 12 and 14 pounds per gallon as needed to control the hole while operations were conducted by it below 14,000 feet." "A special issue should not be submitted if it . . . is . . . conclusively established, or can be answered as a mere matter of legal deduction from undis-

puted facts." See 3 McDonald, Texas Civil Practice (1970 Revised), § 12.08–C; Brown v. Payne, 142 Tex. 102, 176 S.W.2d 306 (1943); 3 McDonald, Texas Civil Practice, § 12.03.1, at 268–69. Defendant did not plead, and offered no proof, that the contractual provision on the respective duties of the parties with respect to the mud program was ambiguous. The judgment reflects that the trial court rendered judgment for plaintiff, inter alia, based upon its independent consideration of all controlling issues of law. The trial court, therefore, must be deemed to have resolved any contract interpretation issues in favor of the judgment. See Westbrook v. Watts, 268 S.W.2d 694 (Waco, Tex.Civ.App., 1954, error ref., n. r. e.).

The jury found that defendant failed to furnish proper drilling mud during plaintiff's drilling operations, and that such failure was a proximate cause of the damages complained of by defendant (Special Issues 56 and 57). Therefore, the contract, the court, and the jury clearly placed upon defendant the duty to furnish and control the drilling mud program. Under the record plaintiff fully performed its duty to "maintain" the mud, and the trial court correctly declined to submit defendant's tendered issue.

We find and hold that the trial court properly refused to include in its charge to the jury an issue with respect to plaintiff's performance of its obligation under the drilling contract to maintain the mud because the trial court submitted Special Issue No. 26, the ultimate issue inquiring whether plaintiff substantially performed the drilling contract and additionally because the evidence conclusively establishes plaintiff's performance of such obligation.

Under its point No. 2 the defendant asserts that the trial court abused its discretion in refusing to strike the testimony of David Gee, a witness for the plaintiff.

Under this point the defendant points out that Rule 267, Texas Rules of Civil Procedure, was invoked early in the trial

of this case. Several days thereafter, the plaintiff called as a witness Mr. David Gee, a consulting geologist. Mr. Gee's testimony included first-hand observations and expert testimony.

After the testimony of Mr. Gee had begun, defendant's counsel learned that the witness' wife had been attending the trial and she was called, on bill of exception, by the defendant. The testimony of Betty Gee revealed that she was the wife of David Gee, the said witness; that she had attended substantial portions of the trial; that she was a public stenographer; that she made notes during the trial; that her notes were transcribed and seen by David Gee, the witness; that she discussed the testimony heard in the course of the trial with David Gee, witness, and that such notes were taken at the request of plaintiff's counsel. The testimony of David Gee appears in the statement of facts and is characterized, in substance, by the conclusion that the plaintiff encountered heaving shale and was without fault.

Defendant's motion to strike the testimony of David Gee was overruled.

David Gee is a consulting geologist, with 25 years' experience in the drilling of oil and gas wells. His services as a consulting geologist were sought and obtained by plaintiff on September 4, 1972, after the drill pipe was stuck for the last time during plaintiff's drilling operations on August 30, 1972. He was on location at the well for part of one day, September 5, 1972.

During the period from September, 1972, until the trial in May, 1973, David Gee performed consulting geological services, including: Examination of rock samples called "wash down samples" and "drilling samples", the preparation of various charts and the examination of electric logs. Such geological investigation and such geological charts represent the substance of Gee's testimony in this case.

No other expert geological evidence was offered by plaintiff or defendant.

The witnesses who testified prior to David Gee included E. W. Moran, Jr., a partner in the plaintiff partnership, one of plaintiff's drillers, plaintiff's tool pusher, a sales service engineer of Magcobar, Division of Dresser Industries, and Gene T. Green, plaintiff's drilling superintendent. The testimony of all these witnesses primarily concerned the drilling operations of plaintiff on the subject well, and not geology. Upon cross-examination by defendant's counsel, David Gee stated that he could not, and did not, testify or express any opinion regarding such drilling operations.

■ Defendant's claim that the trial court erred in failing to strike the testimony of David Gee is based upon Rule 267, T.R.C.P. The Rule permits the trial court, at the request of either party in a civil case, to swear and remove the witnesses from the courtroom so they cannot hear the testimony given by any other witness in the case. It has been held that the Rule is directory, not mandatory. Medrano v. City of El Paso, 231 S.W.2d 514 (El Paso, Tex.Civ.App., 1950, no writ hist.). When the Rule has been properly invoked, as it was in the case at bar, and a party tenders a witness who has not been placed thereunder or there is some other violation of the rule, the trial court, in the exercise of judicial discretion, must determine whether the witness' testimony will be received. Taking into consideration all of the circumstances, the trial judge may bar the witness from the stand, and his ruling will be upset only on a showing of abuse of discretion. Southwestern Bell Telephone Company v. Johnson, 389 S.W.2d 645 (Tex.Sup., 1965); 3 McDonald Texas Civil Practice, § 11.17.3 at page 186. Conversely, upon a similar consideration, the trial judge may, in his discretion, permit the witness to testify, and again the ruling may be upset only upon a showing of manifest abuse of discretion. Southwestern

Bell Telephone Company v. Johnson, supra; Insurance Company of North America v. Parker, 434 S.W.2d 159, 161 (Tyler, Tex.Civ.App., 1968, no writ hist.).

■ It has been generally held that expert witnesses are exempt from the operation of the Rule, or that a violation of the Rule by an expert witness will not justify excluding his testimony. See Lyles v. Texas Employers' Insurance Association, 405 S.W.2d 725 (Waco, Tex.Civ.App., 1966, error ref., n.r.e.); Medrano v. City of El Paso, supra; Portilla Drilling Co. v. Miller, 144 S.W.2d 936, 939 (San Antonio, Tex.Civ.App., 1940, error dism., judgm. cor.); Stedman Fruit Co. v. Smith, 28 S. W.2d 622, 630–631 (Beaumont, Tex.Civ. App., 1930, error dism.); Carter v. Kansas City Southern Ry. Co., 155 S.W. 638, 644 (Texarkana, Tex.Civ.App., 1913, no writ hist.); Lewis v. Owen, 395 F.2d 537 (10th Cir., 1968); Carlile v. State, 451 S.W.2d 511 (Tex.Crim.App., 1970); 85 A.L.R.2d 478 (1962).

■ In applying the principles announced in the authorities above cited, to the case at bar, we find and hold that the trial court correctly refused to strike the testimony of David Gee. The defendant has not shown that it was prejudiced by any violation of the Rule with respect to Mr. Gee. See Stedman Fruit Co. v. Smith, supra. Mr. Gee's testimony is expert testimony notwithstanding the fact that such testimony was based, in part, upon personal observations at the well site after plaintiff's drill pipe became stuck for the last time. Mr. Gee was the only geologist to testify at the trial, and his testimony was uncontroverted.

We overrule defendant's second point.

■ Under its third point the defendant asserts that the trial court erred in entering judgment against the defendant for $30,942.85 included in the so-called "third-party" bills described as Item (4) on page two of the judgment for the reason that plaintiff has denied liability to such creditors for such bills and none of same have been paid by plaintiff. Under this point the defendant relates that in paragraph No. 6 of Exhibit "A" to the contract the defendant (owner) agreed to pay the expense of the items which together make up the "third-party" bills. The parties also agreed that the defendant would " . . . reimburse Contractor (plaintiff) for the costs of material, equipment, work, or services which are to be furnished by Owner (defendant) as provided for herein but which for convenience are actually furnished by Contractor (plaintiff) at Owner's (defendant's) request."

Plaintiff has (a) denied liability for the payment of third-party claims totaling $30,942.85 and (b) has not paid such third-party claims but has a judgment for the aggregate amount of such claims. Defendant further asserts that its duty under the contract is only to "reimburse" plaintiff for the payment of third-party bills. That Black's Law Dictionary (Revised Fourth Edition) defines the word "reimburse" as follows: "To pay back, to make restoration, to repay that expended; to indemnify, or make whole." The defendant further asserts that plaintiff is not entitled to be reimbursed for payments it has not made and that to render judgment in its favor for bills it has neither paid nor even admitted the liability to pay is unjust to defendant and subjects it to future claims or suits from third-party claimants who are not bound by the court's judgment herein.

We overrule defendant's point three.

We find and hold that the trial court properly rendered judgment against defendant for $30,942.85 for third-party services and materials furnished by plaintiff while performing day work.

Under such day work conditions, Paragraph 13.2 of the contract requires that " . . . Contractor shall, in all such cases, without undue delay, exert every reasonable effort to overcome such difficulty."

While the contract requires action by both plaintiff and defendant the evidence indicates that defendant did nothing in performance of its contract, after the sticking of the drill pipe on August 30, 1972, other than to deny the existence of day work conditions.

Plaintiff, in exerting reasonable efforts to overcome the difficulty, was required and did, in fact, order and cause to be furnished such third-party services through various contractors.

The third-party items ordered and caused to be furnished by plaintiff in an effort to overcome the difficulty encountered, when defendant failed and refused to furnish such materials and services, were substantial in amount, in the total sum of $31,737.17 and plaintiff promptly notified defendant thereof and further made, filed and perfected its mechanic's lien claim therefor on the leasehold estate of defendant.

Plaintiff sued for the recovery of the third-party items. The verdict of the jury was for plaintiff thereon and the trial court rendered and entered judgment for plaintiff therefor.

Contrary to assertions of the defendant the plaintiff has not denied liability to any third-party subcontractor. Plaintiff has stated by its pleadings in this cause that, as between plaintiff and defendant, the plaintiff does not admit it is liable to any party for any such items, but says that defendant is contractually liable for the same.

Under provisions of the drilling contract, plaintiff agreed to pay all claims for labor, materials, services and supplies to be furnished by plaintiff-contractor hereunder, and in Paragraph 6 of such contract defendant agreed that all these third-party services and materials involved under this point were required to be furnished by defendant-owner.

The drilling contract between plaintiff and defendant clearly indicates that collateral contracts with third parties were with-in the contemplation of the parties. Various third-party services and materials were required to be furnished by both plaintiff and defendant under the contract. Under such circumstances, plaintiff is entitled to damages arising under such collateral contracts made as a result of the drilling contract. In McGuire v. Osage Oil Corporation, 55 S.W.2d 535 (Tex.Com.App., 1932) the Court stated that: "It is ° . . . practically the universal rule of law . . . that recovery can be had for damages or losses resulting from collateral contracts affected by the breach of the suit contract, . . . . "

Plaintiff is entitled to recovery of such damages arising under collateral contracts, even if plaintiff has not paid for such third-party services, payment thereof being immaterial. Peacock v. Coltrane, 116 S.W. 389 (Tex.Civ.App., 1909, no writ hist.); Taylor v. Mark, 376 S.W.2d 927 (Waco, Tex.Civ.App., 1964, error ref., n.r.e.); and City of Houston v. United Compost Services, Inc., 477 S.W.2d 349 (Houston, Tex. Civ.App., 1st Dist., 1972, error ref., n.r.e.).

It is fundamental that in breach of contract actions of this nature, the obligee is the only necessary party plaintiff to an action on the contract. Plaintiff is the only obligee under the subject drilling contract, and plaintiff, alone, has the right to enforce its contract with defendant. The third-party subcontractors may be themselves the owners of causes of action against plaintiff and/or defendant, or may be the beneficial owners of a portion of plaintiff's cause of action herein. But these third-party subcontractors of plaintiff, even if equitable owners of interests in plaintiff's cause of action, are neither indispensable nor necessary parties to plaintiff's action on the contract. McNeil v. McLain, 272 S.W.2d 573 (Fort Worth, Tex.Civ.App., 1954, no writ hist.); Southern Kansas Ry. Co. of Texas v. Morris, 100 Tex. 611, 102 S.W. 396 (1907). In Matthews v. First State Bank, 312 S.W.2d 571, 580 (Beaumont, Tex.Civ.App., 1958, error ref., n.r.e.) the Court of Civil Ap-

peals spoke directly to the point: "Had the appellants pointed out to the trial court the fact that such claims were being made and had alleged the validity of such liens, the court would probably have made them parties. They are, however, not necessary parties to this suit between the appellee bank and the appellants. . . . They were not necessary or indispensable parties to the present controversy between appellants and appellee. Since the appellants took no steps in the trial court to make these persons parties, they have waived such joinder."

■ The plaintiff, having ordered and caused such third-party sub-subcontractor services to be furnished herein, is entitled to assert and did assert and perfect and obtain judgment of foreclosure of its mechanic's and materialmen's lien to secure payment for such third-party services pursuant to Articles 5473 and 5476, Vernon's Ann. Texas Revised Civil Statutes. Such lien statutes provide for the protection of defendant. Texas Revised Civil Statutes, Art. 5472e, Section 1 (Supp., 1974). The statutory trust so created and imposed upon plaintiff here is afforded broad and liberal construction. Panhandle Bank & Trust Co. v. Graybar Electric Co., Inc., 492 S.W.2d 76 (Amarillo, Tex.Civ.App., 1973, error ref., n.r.e.). The fiduciary responsibility of plaintiff with respect to any funds so paid by defendant is amply protected.

Defendant under its contract with plaintiff is obligated to indemnify or to make plaintiff whole with respect to the $30,942.-85 obligation incurred for third-party services furnished under the subject drilling contract.

By its point of error No. 4 the defendant contends that the trial court erred in awarding the plaintiff interest at ten percent per annum on $28,159.52 for equipment furnished and/or lost inasmuch as there is no provision of the contract or law which justifies the imposition of interest on this particular charge prior to the date of judgment.

The plaintiff, by its Second Amended Original Petition, sought under its contract with defendant ten percent (10%) per annum interest on the sum of $28,159.52 for services performed and equipment furnished and/or lost in the hole as provided in the subject drilling contract. The trial court, in its judgment, granted such ten percent per annum interest from December 20, 1972, until paid on such sum of $28,159.52.

The drilling contract expressly makes defendant liable for services performed and equipment furnished and/or lost while performing day work and expressly obligates defendant to pay interest thereon in the amount and in the manner described and that "Any sum or sums not paid within 30 days after the due date hereinabove specified shall bear interest at the rate of 10 percent per annum from such date until paid." The jury determined the value of such equipment and rendered judgment therefor, plus the interest specified by the contract.

■ The right to interest is statutory and regulated, but, within such statutory framework, parties are at liberty to contract for the payment of conventional interest. Texas Revised Civil Statutes Annotated, Art. 5069–1.01(c) (1971). "Under all of the authorities, the interest contracted for is a part of the debt, as much so as the principal." First Nat. Bank v. J. I. Campbell Co., 52 Tex.Civ.App. 445, 114 S. W. 887, 890 (1908, no writ hist.).

■ We find and hold that the parties to the above described drilling contract have agreed not only as to the principal obligations of defendant in case of operations on day work, but also for interest to be paid thereon, specifying both the rate of such interest payable by defendant and the time from which the same is payable.

When plaintiff is entitled to judgment on the contract, plaintiff is also entitled to interest thereon as provided in the contract, and judgment of the court therefor

shall be rendered accordingly. Seaboard Bank & Trust Co. v. Amuny, 6 S.W.2d 186, 189 (Beaumont, Tex.Civ.App., 1928, affirmed at Tex.Com.App., 23 S.W.2d 287, 1930). The fourth point is overruled.

Having considered and overruled each of the appellant's points of error we accordingly affirm the judgment of the trial court.

Affirmed.